[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12945
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-00272-TCB-ECS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RASHAAD WILSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 8, 2015)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

A jury convicted Rashaad Wilson of conspiracy and robbery in violation of

the Hobbs Act, using a firearm during that Hobbs Act robbery, and possessing

marijuana with intent to distribute it.  The path to that verdict involved some procedural irregularities.  The principal — though not sole — question before us is whether those irregularities warrant reversal.  We conclude that they do not.

Wilson and his coconspirators posed as police officers and robbed the Atlanta home of a suspected drug dealer, whom they then kidnapped at gunpoint. One of the victim's relatives alerted the police — the actual police, that is — who promptly freed the victim and arrested some of the coconspirators.  Wilson, however, remained at large for a time.  To apprehend him, the Bureau of Alcohol, Tobacco, Firearms, and Exposives applied for and obtained a court order directing Wilson's cellular service provider to turn over data about the location and usage of the phone number associated with Wilson's phone.

Wilson was eventually apprehended and indicted for his part in the scheme. Before trial, he moved to suppress the data obtained from his cellular service provider that showed the location of his cell phone at the time of the crime.  He argued that the government's application for a court order to obtain the location data hadn't complied with the requirement in the Stored Communications Act, 18 U.S.C. § 2703(d), that such an application include specific and articulable facts showing that the cell site records were relevant to an ongoing criminal investigation.  A magistrate judge issued a report recommending that the motion be denied, concluding that the application met the standard set out in the Act.  When

neither party objected to the report, the district court adopted it and denied Wilson's motion to suppress.

Wilson later moved to dismiss the indictment against him with prejudice on the ground that the government had violated his rights under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), which generally requires that a defendant be tried within 70 days from the filing of the most recent information or indictment, or from the date the defendant first appeared before a judicial officer of the court, whichever is later.  The government acknowledged that the indictment against Wilson should be dismissed under the Act, but asked that the dismissal be without prejudice. Without holding a hearing, the district court signed the government's proposed order dismissing the indictment without prejudice, after which the government filed a new indictment against Wilson that was materially indistinguishable from the dismissed one.  Wilson moved for a hearing on the dismissal, which the district granted.  After listening to argument by the parties, however, the court denied Wilson's motion to change its order dismissing the original indictment with prejudice.

Wilson's trial — based on the new indictment — took place in December 2013.  The evidence against him was considerable.  The victim of the robbery testified that men dressed as police had robbed him at gunpoint.  Three coconspirators testified that Wilson participated in the robbery.  An FBI special

agent testified that cell site data showed calls to and from Wilson's phone on the night of the robbery, made from the area where the robbery occurred. A defense witness who had previously stated that Wilson was with her on the night of the robbery recanted that testimony in front of the jury.

The only witness to offer an alibi for Wilson was Torrez Seymore, who was a fourth coconspirator. Seymore testified that Wilson was with his girlfriend on the night of the robbery. After Seymore testified that he didn't know Wilson well, the government played a phone call between Wilson and Seymore in which the two spoke in code to one another. Seymore still maintained that he and Wilson hardly knew each other. He also testified that, on the night of the robbery, he had been in possession of two cell phones the government had tied to the robbery, and that Wilson had not possessed either of those phones. On rebuttal, however, another FBI special agent testified that the two phones at issue had called each other approximately ten times on the night of the robbery.

After charging the jury, the district court sent the jurors to deliberate. Neither the court nor the parties realized at the time that an alternate juror had accompanied the jury into the jury room and participated in the jury's deliberations. It took the jurors (all 13 of them) less than an hour to find Wilson guilty on all counts.

4

Three months after trial, Wilson learned that the district court might not have properly separated the alternate juror after charging the jury. On Wilson's motion, the court permitted defense counsel to interview the jurors, who confirmed that the alternate had, in fact, participated in deliberations. Wilson moved for a mistrial. The court recharacterized his motion as being for a new trial and denied it on the ground that it was time barred under Rule 33 of the Federal Rules of Criminal Procedure, which requires a motion for a new trial to be filed within 14 days unless the motion is based on newly discovered evidence. The court determined that Wilson could not avail himself of Rule 33's newly-discovered-evidence exception because he had been in the courtroom during trial and had seen the alternate retire with the jury after charging. The district court further determined that Wilson could not show that allowing the alternate to deliberate with the jury was plain error because there was no evidence that the error prejudiced Wilson's substantial rights.

Wilson timely filed this appeal, challenging his conviction on three grounds. First he contends the district court improperly admitted evidence of the cell site data because the application for an order granting access to the cell site data was not supported by the type of specific factual content required by the Stored Communications Act. Next he contends the district court abused its discretion in denying his motion to have the original indictment against him dismissed with

5

prejudice, chiefly because the district court's ruling allowed the government to circumvent the Speedy Trial Act. Finally he contends that the district court erred in denying his motion for a new trial based on the alternate juror's participation in jury deliberations.

The district court properly denied the motion to suppress the cell site evidence because the Stored Communications Act does not authorize suppression as a remedy for violations of its provisions. "The availability of the suppression remedy for . . . statutory, as opposed to constitutional, violations . . . turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights." United States v. Donovan, 429 U.S. 413, 432 n.22, 97 S. Ct. 658, 670 n.22 (1977). The Act provides a private right of action against violators other than the United States and also provides procedures for disciplining federal officials involved in violations. See 18 U.S.C. § 2707. It does not, however, provide for suppression as a remedy. See id. at § 2708. As a result, the lack of supporting facts in the application for the order to obtain the cell site data isn't a basis for reversing the district court's order denying Wilson's motion to suppress.

Wilson also argued, at least initially, that his cell site data was obtained in violation of his Fourth Amendment rights and that the district court should have suppressed the data on that basis, too. As Wilson acknowledges, however, our

supervening decision in United States v. Davis, 785 F.3d 498, 513 (11th Cir. 2015) (en banc), forecloses that argument.

The district court also did not abuse its discretion in denying Wilson's motion to change its dismissal of the indictment from without prejudice to with prejudice. Although a violation of the Speedy Trial Act entitles a defendant to dismissal of the indictment against him, the district court has considerable discretion in deciding whether to dismiss the indictment with or without prejudice. United States v. Miranda, 835 F.2d 830, 834 (11th Cir. 1988). In making that decision the district court must consider three factors: (1) the seriousness of the offense; (2) the facts and circumstances that led to dismissal of the indictment; and (3) the effect of re-prosecution on the administration of the Speedy Trial Act and the administration of justice. 18 U.S.C. § 3162. Where the district court considers all three statutory factors, its judgment "should not lightly be disturbed" so long as the underlying factual findings are not clearly erroneous. United States v. Taylor, 487 U.S. 326, 337, 108 S. Ct. 2413, 2420 (1988).

Here, the district court considered all three statutory factors in making its decision. It reasonably concluded that the charged crimes were "incredibly serious" because armed robbery of a suspected drug dealer is an inherently violent offense. The seriousness of Wilson's crimes is underscored by the fact that the firearm charge alone carried a possible life sentence. The court also noted that the

7

facts and circumstances leading to the Speedy Trial Act violation were innocuous. As the court explained, the violation was the product of a mistake stemming from a confusing docket entry. The court emphasized that the government's mistake was an innocent one "that many people could have made," and noted that, given the misleading label for the docket entry, the mistake probably didn't "event fi[t] in the category of negligence." Finally, the court noted that the third statutory factor, which "has to do with the amount of time involved in the delay," weighed in the government's favor because, excluding days tolled under the Speedy Trial Act, the delay in Wilson's case was only "a matter of a month or a matter of weeks or months," instead of "six months or a year." The court stressed that the delay hadn't cost Wilson access to any evidence for trial, and had actually helped his defense because an alibi witness had come forward for Wilson during the period of delay. In sum, the district court conscientiously applied the three factors in deciding to dismiss the indictment without prejudice, and the factual findings on which its decision rested were not clearly erroneous. Under those circumstances, we will not disturb the court's ruling, even if reasonable courts might have decided the motion differently. See Taylor, 487 U.S. at 337, 108 S. Ct. at 2420.

Finally, the district court's error in allowing the alternate juror to deliberate with the jury was harmless. We will not set aside a jury verdict because of an error

that was harmless.[1]  See 28 U.S.C. § 2111; Chapman v. California, 386 U.S. 18, 22–24, 87 S. Ct. 824, 827–28 (1967).  The standard for deciding whether an error was harmless depends on the type of error at issue.  Errors affecting a defendant's constitutional rights "must be proven harmless beyond a reasonable doubt." United States v. Guzman, 167 F.3d 1350, 1353 (11th Cir. 1999).  Even assuming that an alternate's participation in jury deliberations rises to the level of constitutional error, the evidence against Wilson was so overwhelming as to leave no reasonable doubt that the jury would have reached the same verdict had the error not occurred.  Three separate coconspirators testified that Wilson participated in the crimes charged.  FBI agents testified about cellular data showing Wilson in the area of the crimes when they occurred.  One of his alibi witnesses admitted on the stand that the alibi she'd given Wilson was false, while the other alibi witness's account was repeatedly and conclusively disproved by phone recordings and cellular data.  The strength of the case against Wilson is reflected in the fact that it took the jury less than an hour to convict him on all counts charged.  There is simply no reasonable doubt that the alternate's participation in deliberations did not affect the outcome of Wilson's trial, meaning the district court's error in

---

[1] Wilson and the government disagree about whether our review on this point should be for abuse of discretion or only for plain error.  We need not address that disagreement because, even were we to apply the more defendant-friendly abuse-of-discretion standard for which Wilson advocates, it is clear that the district court's error didn't affect the outcome of trial.

allowing the alternate to participate in deliberations was harmless on the facts of this case.

**AFFIRMED.**