**UNITED STATES of America,**

v.

**URI AMMAR, Defendant.**

**CASE NO. 11–CR–20613–KING**

United States District Court,
S.D. Florida.

Signed 02/22/2017

Jonathan Kobrinski, U.S. Attorney's Office, Miami, FL 33131, 305.961.9074, Email: jonathan.kobrinski@usdoj.gov, Michael E. Gilfarb, United States Attorney's Office, 99 NE 4 Street, Miami, FL 33132, 305-961-9015, Fax: 530-7976, Email: Michael.Gilfarb@usdoj.gov

Ashley Michelle Litwin, Law Offices of Marc David Seitles, P.A., 40 N.W. 3rd Street, PH One, Miami, FL 33128, 3054038070, Email: litwinashley@gmail.com, Marc David Seitles, Seitles & Litwin, P.A., Courthouse Center, 40 N.W. 3rd Street, Penthouse One, Miami, FL 33128,

305-403-8070, Fax: 305-403-8210, Email: mseitles@seitleslaw.com

## ORDER DISMISSING INDICTMENT WITHOUT PREJUDICE

JAMES LAWRENCE KING, UNITED STATES DISTRICT JUDGE

THIS CAUSE comes before the Court upon Defendant URI AMMAR's motion to dismiss the indictment with prejudice pursuant to the mandate of the Eleventh Circuit Court of Appeals for failure to comply with the Speedy Trial Act (the "Act"), 18 U.S.C. § 3161, and a motion by the Government to dismiss the indictment, but without prejudice. DE 479; DE 480. Both motions were filed on January 31, 2017.[1] The Court heard oral argument on February 14, 2017.

## I. INTRODUCTION

Defendant seeks dismissal of the Superseding Indictment (DE 222) with prejudice based upon the failure to bring him to trial within the timeframe required by Act. In support of his motion, the defense relies heavily on its erroneous calculation of a 332–day violation of the Act and the prejudice Defendant claims to have suffered by the wrongful denial of his counsel of choice. The government concedes that this matter must be dismissed for failure to comply with the Act, but moved for a dismissal without prejudice.

## II. RELEVANT PROCEDURAL HISTORY

### A. The Indictment

On September 1, 2011, a federal grand jury in the Southern District of Florida

---

1. Following the issuance of the Mandate of the Eleventh Circuit Court of Appeals (DE 467), which reversed and remanded the above-styled case with instructions to the Court to dismiss the indictment, after determination whether the dismissal should be with or without prejudice. The Court directed the parties to submit briefs addressing the statutorily-enumerated set forth in the Speedy Trial Act, 18 U.S.C. § 3162(a)(2).

returned a three-count indictment charging Defendant and his co-conspirators Reginald Mitchell, Vladimir Louissant, Victoria Barkley, and Byron Kyler with Hobbs Act robbery, conspiracy to commit Hobbs Act robbery, and carrying and using a firearm in furtherance of a crime of violence, which resulted in the death of Alvaro Lopez Ramos, a Brinks security guard. DE 31. Defendant and his co-conspirators each entered pleas of "not guilty" to the charges contained in the indictment. DE 34; DE 35; DE 36; DE 39; DE 85.

### B. The Scheduling Conference and the Scheduling Order

On September 13, 2011, the Court held a scheduling conference for the purpose of adjusting all scheduling conflicts among counsel and selecting a positive date for the trial of this matter. DE 32; DE 59; see also DE 362. At the scheduling conference, the Court raised the death penalty issue and questioned the government as to whether or not it intended to seek the death penalty in this case. DE 362 at 9. The government informed the Court that: 1) it had not yet made a determination with respect to the death penalty, 2) the decision-making process is a long one, and 3) the decision is made out of the main Department of Justice office in Washington, D.C. Id.

Based on the Court and counsels' previous experience with death penalty cases, concern over obtaining a carefully reasoned decision on this vital issue was discussed. Timely cooperation from defense counsel, the U.S. Attorney for the Southern District of Florida, and the Attorney General at the Department of Justice was imperative. Id. at 9–14. While discussing the points raised by the Court, learned counsel for Defendant Mitchell, Mr. Lenamon,[2] informed the Court that the lengthy death penalty decision-making process requires substantial investigation, including examination by mental health experts, for the purpose of presenting mitigating factors, and defenses to aggravating factors, to the DOJ. Id. at 15–16. Mr. Handfield, learned counsel for Defendant Barkley, echoed Mr. Lenamon's appraisal of the lengthiness of the process, stating, "I've never been in a [death penalty] trial and get the government to maintain a [death penalty] position in less than a year in every single case I've had in the federal system. I have handled at least 20 federal death penalty cases." Id. at 20.

Learned counsel for Defendant, William Matthewman,[3] stated his belief the government would not seek the death penalty against his client based on his client's role in the robbery, expressed his concern over his client's pre-trial detention, and advised the Court that he would be unable to acquiesce to a trial date one year hence if his client was to be in pre-trial detention the whole time.[4] Id. at 21–22. The Court then inquired of Mr. Matthewman whether

---

**2.** At the time of the hearing, Defendant Mitchell's motion for the appointment of Mr. Lenamon as learned counsel was still pending, however, during the hearing, the Court stated that the motion would be granted, and it was granted by written order the following day. DE 53; DE 67; DE 362 at 43.

**3.** During the pendency of this case, the Honorable William D. Matthewman was selected and appointed to become a magistrate judge in the Southern District of Florida, a position he currently holds. To avoid confusion over

Mr. Matthewman's status at different times in this case, he will be referred to, in this opinion, as Mr. Matthewman.

**4.** Mr. Matthewman, focusing on the Court's denial of pre-trial release on bond, stated, "We feel our position is going to be very different from [counsel for Defendant Louissant's] position. We are not willing to agree to a six, eight, 12–month continuance while he sits in jail, unfairly pre-trial detained, according to our position in the case, very respectfully." DE 362 at 23.

he anticipated filing a motion to sever his client and noted that the protracted DOJ death penalty decision-making process might be grounds for such a motion. *Id.* at 23. In response, Mr. Matthewman stated, "There are several severance issues on inconsistent defenses to the point where I believe it would be virtually impossible for this case to proceed with all Defendants tried together in a single trial. I know the courts, and especially Your Honor, are inclined not to want to sever." *Id.* The Court then informed the parties that the Court often conducts severed trials where the circumstances require it. *Id.* at 23–24. Indeed, the Court stated, "Matter of fact, this might be a very good case to try about three of these people or four of these people on a severed situation ... if there is no death penalty involved." *Id.* at 24–25. Mr. Matthewman stated he could be ready for trial very quickly and reiterated that he "cannot acquiesce to a [trial] date a year away." *Id.* at 25.

Continuing the discussion of scheduling, the Court heard from counsel for Defendant Louissant, Assistant Federal Public Defenders Jan Smith and Eric Cohen,[5] who informed the Court that: 1) counsel for clients charged with a crime punishable by the death penalty must treat the case as a death penalty case until a DOJ decision otherwise is made, 2) death penalty cases in this District often require a year or more before trial while the parties await a decision from the DOJ, 3) they would request five months to prepare their death penalty mitigation package for presentation to the U.S. Attorney for the Southern District of Florida; and 4) the Spencer Report to the Judicial Commission states that a defense counsel's opportunity to present a mitigation package is a "critical

stage" in death penalty proceedings and "it is essential that we be given the time to make our presentation to Washington." *Id.* at 31–39. Based on these representations, and knowledge of the Court's scheduling practices,[6] counsel for Defendant Louissant asked that the Court refrain from setting a trial date <u>at all</u> until the DOJ rendered a death penalty decision. *Id.; Id.* at 40.

After hearing from counsel for Defendant Louissant, Mr. Matthewman urged the Court to set a trial date in December of 2011, stating: "If that's not possible, we would ask that Your Honor seriously consider reviewing the pre-trial detention order in this case upon a motion of the defense." *Id.* at 41.

Counsel for Defendant Barkley, Mr. Perez, also refocused the hearing on client release on bond pending trial, stating: 1) he did not believe the government would seek the death penalty against his client and he would request a trial date sooner than one year hence, 2) severance issues would be forthcoming due to the fact that each of the Defendants gave statements that tended to implicate each other, and 3) "If [the Court] takes the position that we're going to set it a year from now, I would also ask the Court to revisit her [pretrial] detention." *Id.* at 41–42.

Finally, the Court heard from counsel for Defendant Mitchell, Mr. Petruzzi, who also asked that the Court refrain from setting a trial date, and informed the Court that he would be requesting six to seven months to prepare his mitigation package for presentation to the U.S. Attorney for the Southern District of Florida. *Id.* at 42.

---

5. Immediately following the hearing, AFPD Eric Cohen was appointed as learned counsel to Defendant Louissant. DE 66.

6. Trial dates, set after hearings with counsel, where attorney conflicts are considered, are literally "set in concrete" with continuances rarely granted by this Judge.

At the conclusion of the hearing, the Court took the matter under advisement, and, on the same day, issued an order granting the government's request to set the trial date one year hence, which states, in pertinent part,

> During the discussion with all counsel (and all defendants present) held Tuesday, September 13, 2011 for the purpose of selecting a conflict-free trial date in the above-styled case, the Court was advised that a reasonable time allowance of approximately one year would be necessary for the parties to implement the newly-amended death policy procedures in order to permit careful consideration by the Department of Justice of whether or not this case will proceed to trial as a "death case." Several defense counsel advised the Court that there are other procedures that will be necessary for court-appointed counsel to follow to obtain approval from the Eleventh Circuit Court of Appeals for a budget to handle a potential death case. After a thorough discussion, it became apparent that the Court's best efforts to get this case tried under its normal procedures of setting conflict-free trial dates within approximately 90–120 days is not a reasonable objective.
>
> It should be noted that several defense counsel indicated that they were opposed to a trial date set so far in the future since their clients were in custody.
>
> Taking all these matters into consideration, it is the judgment of the Court that the Government's motion for a trial date one year hence should be granted.

DE 64 at 1–2. The Court then entered a scheduling order (DE 65) setting this matter for trial during the two-week calendar commencing October 9, 2012 in Miami, Florida. While the scheduling order does not cite the Local Rules for the Southern District of Florida (the "Local Rule(s)"), these rules require parties to alert the court to any violations of the Act by filing periodic written speedy trial reports setting forth counsels' computation of the speedy-trial period, identifying any excludable time, and stating the final date upon which a defendant may be tried in compliance with the Act. *See* S.D. Fla. L.R. 88.5. In spite of this rule, reflecting long-established Southern District policy, not a single speedy trial report was filed by any party to this case.[7]

## C. The Appeal of the Pre-trial Detention Order, and Participation in the Death Penalty Protocol

Fourteen days after the scheduling order was entered, on September 27, 2011, Defendant filed an appeal of the pre-trial detention order entered on September 1, 2011. *See* DE 29; DE 91. In his appeal, Defendant argued, in pertinent part,

> In light of the protracted trial date obtained upon the government's request, it would be unconstitutional and unfair *to pretrial detain* Mr. Ammar in this case ... [and i]t is respectfully submitted that the government cannot have it both ways. That is, the government cannot obtain from this Honorable Court, over defense objection, a lengthy trial date more than one year hence, and then attempt to keep Mr. Ammar pretrial detained on such flimsy evidence, especially where the government's discovery establishes that there is a valid duress defense, for such an extended period of time. This is a misuse of the pretrial detention statute. It violates Mr. Am-

---

7. This supports two inferences: 1) the parties were negligent in their duties to obey the Local Rules and 2) the parties believed the on-the-record discussion at the scheduling hearing and the findings in the scheduling order adequately established the necessity of a trial date set beyond the timeframe required by the Act. *See* Discussion, Part III, *infra.*

mar's due process rights. It also violates Mr. Ammar's speedy trial rights. Mr. Ammar *should be released pretrial.*

DE 91 at 3, 11 (emphasis added).

The Court denied the appeal, stating, "the Court finds that pretrial detention of a year, given the cause of the delay and the potential for the death penalty, does not violate defendant's constitutional or speedy trial rights." DE 124 at 3. Additionally, the Court found,

> At the hearing, Defendant Ammar objected to a trial date a year out, indicating that he would need only 30 days to prepare for the death penalty mitigation hearing. Ultimately, after consideration of the Government's and all of the Defendants' positions, the Court selected a trial date a year out so as to provide both the Government and all of the Defendants with the tie necessary to comply with the death penalty protocol and to prepare for mitigation hearings. The very reason for the delay of trial is to provide the Defendants, including Defendant Amar, with the resources and time necessary to offer mitigating evidence in the face of charges that carry the maximum sentence of the death penalty.

*Id.* at 3.

At this point the Court notes that despite 1) the entry of the scheduling order setting the trial thirteen months away, as well as the Court's statement at the scheduling conference that such a setting might give rise to grounds for a severance, and 2) the above-described denial of Defendant's appeal of the pre-trial detention order, Defendant neither moved to be severed and tried within the timeframe required by the Act, nor did he seek reconsideration of the scheduling order. Instead, he merely sought reconsideration of the pretrial detention order in light of the trial date. Indeed, Defendant did not move for a severed trial for nearly eleven months. *See*

DE 181. Additionally, when Defendant did move for a severed trial, it was not based upon his desire to be tried sooner than the date set by the Court, it was based upon "prejudicial joinder of defendants due to statements made by co-defendants in violation of *Bruton v. United States*, 391 U.S. 123 [88 S.Ct. 1620, 20 L.Ed.2d 476] (1968) ...." *Id.*

In fact, rather than seek a severance, Defendant engaged in a time-consuming death penalty mitigation investigation, which culminated in his submission of a death penalty mitigation memorandum to the U.S. Attorney for the Southern District of Florida on February 3, 2012. DE 479–1. The submission of this letter was three-and-one-half months beyond the thirty-day timeframe Defendant claimed he would require to prepare it, and the letter stated counsel was "still in the early investigative stages of this case." *Id.; see also* DE 362 at 29. Approximately one year later, the DOJ finally made its decision not to seek the death penalty as to any Defendant. DE 177.

### D. Unavailability of Defense Counsel William D. Matthewman

Beginning in February of 2012, Defendant was aware that his counsel, Mr. Matthewman, was not going to be available for the trial scheduled in October, due to his selection for appointment as a magistrate judge in the Southern District of Florida. *See* DE 135. Noting that his appointment would require Mr. Matthewman's withdrawal from this case, Defendant sought appointment of new counsel. *Id.* Despite his knowledge that counsel would be unavailable as of May of 2012, Defendant did not move to be severed and tried prior to Mr. Matthewman's looming unavailability, but instead stated that the motion was being filed "so that there is no delay in the trial date." *See id.* at 1–2. On July 2, 2012,

the Court granted Mr. Matthewman's motion to withdraw from the case, filed on June 25, 2012. DE 169; DE 170.

### E. The Superseding Indictment, the Motion to Dismiss, and the Trial

On September 13, 2012, Defendant was charged by superseding indictment with Hobbs Act robbery, conspiracy to commit Hobbs Act robbery, carrying and using a firearm in furtherance of a crime of violence, and carrying and using a firearm in furtherance of a crime of violence, which resulted in the death of Alvaro Lopez Ramos.[8] DE 222.

One week before the trial, on October 2, 2012, Defendant filed a motion to dismiss the superseding indictment pursuant to the Act. DE 238. The Court heard oral argument on the motion and denied it during the calendar call on October 4, 2012. DE 240. In ruling on the motion, the Court mistakenly stated the trial date was selected by mutual agreement of the parties and that each Defendant had waived their speedy trial rights.[9] *United States v. Ammar*, 842 F.3d 1203, 1211 (11th Cir. 2016).

Of the charged conspirators, only Defendant proceeded to trial, where a jury rejected his duress defense and found him guilty as to each count except the capital charge of carrying and using a firearm in furtherance of a crime of violence, which resulted in death. DE 279. The guidelines adopted by the Court at sentencing included a "murder cross-reference" resulting in a guideline range of thirty years to life imprisonment. In light of the evidence adduced at trial, and after hearing from family members of the victim and Defendant,

the Court sentenced Uri Ammar to life imprisonment.

On appeal, Defendant prevailed on the basis that he was not tried within the time dictates of the Act. The Court of Appeals for the Eleventh Circuit found that this Court did not make the necessary on-the-record "ends of justice" findings required by the Act. *Id.* Notwithstanding the discussion at the scheduling conference, the reasoning underpinning the order granting the motion to set a trial date one year hence, and the reasoning in the denial of Defendant's appeal of the pre-trial detention order, the panel concluded that the Court's refusal to make an ends-of-justice finding at the calendar call made "it difficult to affirm the court's decision here, even if we might otherwise conclude that there were adequate reasons to justify the continuance." *Id.* Indeed, the panel held that the Court's "explicit declination" to make such a finding was dispositive. *Id.* at 1212. Accordingly, this matter was remanded to the undersigned with instructions to dismiss the superseding indictment and to determine whether the dismissal should be with or without prejudice based upon the statutory factors set forth in the Act, as discussed in *United States v. Taylor*, 487 U.S. 326, 333, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988). *Id.* at n.8.

### F. Speedy Trial Clock Calculation

The Speedy Trial Act states,

the trial of a defendant...shall commence within seventy days from the filing date (and making public) of the ... indictment, or from the date the defendant has appeared before a judicial offi-

---

**8.** The filing of the superseding indictment had no effect on the speedy-trial clock.

**9.** The correct reasons the trial date was selected are reflected in the record by the transcript of the scheduling hearing, the schedul-

ing order, and the order denying Defendant's appeal of the pretrial detention order. *See* Parts II.B. & C *supra*. Additionally, Defendants Ammar and Barkley objected to a trial date one year away. *See* DE 64; DE 362.

cer of the court in which such charge is pending, whichever date last occurs. 18 U.S.C. § 3161(c)(1). The statute additionally lists various periods of delay that are excludable from the computation of when a trial shall commence. 18 U.S.C. § 3161(h)(1).

Defendant was arrested on August 22, 2011, and then brought before a judicial officer in the Southern District of Florida for his initial appearance on August 23, 2011. DE 20. Therefore, the speedy-trial clock began to run on September 2, 2011, following the return of the initial Indictment (DE 31) against Defendant Ammar and his co-defendants.[10] *See United States v. Campbell*, 706 F.2d 1138, 1139 (11th Cir. 1983) (excluding date of indictment in calculating time within which trial must commence under Speedy Trial Act).

Prior to the expiration of the speedy-trial clock, the following excludable periods occurred:[11]

1) September 6, 2011, When Defendant Was Arraigned (De 39);[12]

2) September 6, 2011 through October 19, 2011, while the government's motion to revoke bond as to Defendant Kyler was pending (DE 38; DE 55; DE 63; DE 88; DE 96; DE 98; DE 99; DE 102; DE 103);[13]

3) September 13, 2011, when the Court held a scheduling conference;[14]

4) September 27, 2011 through December 1, 2011, while Defendant's appeal of his detention order was pending (DE 91; 92; DE 100; DE 124);[15]

5) October 21, while Defendant Kyler's motion to release bond obligation was pending (DE 105; DE 106);[16]

6) October 28, 2011 through November 1, 2011, while an *ex parte* motion relating to Defendant Mitchell's CJA expenses was pending (DE 107; DE 108);[17]

7) November 8, 2011 through November 17, 2011, while Defendant Louissant's motion for interim payments to his CJA counsel was pending (DE 111; DE 114);[18]

8) November 28, 2011 through December 1, 2011, while Defendant Barkley's interim motion for attorney fees was pending (DE 121; DE 125);[19]

9) January 5, 2012 through January 9, 2012, while Defendant's motion to with-

---

**10.** Defendant Ammar's initial appearance occurred before the filing of the Indictment, therefore the speedy-trial clock began to run the day following the filing of the Indictment on September 1, 2011. *See* DE 20; 18 U.S.C. §§ 3161(c)(1) & 3161(h)(1).

**11.** Certain excludable periods which are duplicative of the periods listed below are omitted.

**12.** 18 U.S.C. § 3161(h)(1) (periods of delay resulting from "any proceeding[ ] concerning the defendant" are "excluded in computing the time within which ... the trial of any such offense must commence.").

**13.** 18 U.S.C. §§ 3161(h)(1)(D) (delays resulting from "any pretrial motion" are excludable) & 3161(h)(6) ("A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance

has been granted."); *United States v. Stafford*, 697 F.2d 1368, 1372 (11th Cir. 1983) (holding motion filed by one defendant creates excludable time for his co-defendant).

**14.** *See* statute cited *supra* note 12.

**15.** Defendant Ammar's appeal became ripe upon the filing of his reply in support of his appeal (DE 100) on October 12, 2011, therefore the excludable period as to this motion terminated thirty days later, on November 11, 2011. *See* 18 U.S.C. §§ 3161(h)(1)(D) & 3161(h)(1)(H).

**16.** *See* statute and case cited *supra* note 13.

**17.** *Id.*

**18.** *Id.*

**19.** *Id.*

draw (as to counsel Richard Ozelie) was pending (DE 128; DE 129; DE 130);[20]

10) January 6, 2012 through January 18, 2012, while an *ex parte* motion relating to Defendant Barkley's CJA representation was pending (DE 131; DE 132; DE 133);[21]

11) February 3, 2012 through February 23, 2012, while Defendant's motion for appointment of CJA counsel was pending (DE 135; DE 144);[22]

12) February 15, 2012 through March 30, 2012, while an *ex parte* motion relating to Defendant Mitchell's CJA representation was pending (DE 142; 152; DE 155).[23]

Excluding the above-described periods from the computation of the time within which the trial must have commenced pursuant to the Speedy Trial Act, the speedy-trial clock expired on March 22, 2012.

### G. Delay Beyond the Speedy Trial Period

The opinion of the Eleventh Circuit Court of Appeals in the matter of *United States v. Young* seems to indicate that periods of delay which occur beyond the expiration of the speedy-trial clock may not be considered "excludable" under the Act. No. 15–12389, slip op. at 6 (11th Cir. Jan. 20, 2017) (citing *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001), for the proposition that a deadline cannot be tolled "when there is no period remaining to be tolled."). Accordingly, the Court calculates the delay beyond the expiration of the speedy-trial clock as 200 days.[24] However, if post-expiration delays *can* be considered excludable, the following fifty-six days would be considered excludable:[25]

1) April 10, 2012 through April 16, 2012, while Defendant's *ex parte* motion for expert and investigative assistance was pending (DE 157; DE 158);[26]

2) May 1, 2012, when the Court held a status conference (DE 161);[27]

3) June 25, 2012 through July 2, 2012, while Defendant's motion to withdraw (as to Mr. Matthewman) was pending (DE 169; DE 170);[28]

4) August 8, 2012 through September 12, 2012, while Defendant's motion to suppress statements was pending (DE 182; DE 187; DE 200; DE 202; DE 218);[29]

5) October 2, 2012 through October 5, 2012, while Defendant's motion to dismiss Count III was pending (DE 235; DE 258).[30]

### III. DISCUSSION

The Court of Appeals for the Eleventh Circuit held that "in deciding whether to dismiss an indictment for violation of the Speedy Trial Act with or without prejudice, 'there is no preference for one type of dismissal over the other.'" *United States v. Branham*, 285 Fed.Appx. 642, 643 (11th Cir. 2008) (citing *United States v.*

---

**20.** *Id.*

**21.** *Id.*

**22.** *Id.*

**23.** As the *ex parte* motion was ripe before the Court upon the initial filing, the Court concludes the excludable period as to this motion terminated thirty days later, on March 16, 2012. *See* statutes cited *supra* note 15.

**24.** There are 200 calendar days between March 22, 2012 and October 9, 2012.

**25.** Certain periods which are duplicative of the periods listed below are omitted.

**26.** *See* statute and case cited *supra* note 13.

**27.** *See* statute cited *supra* note 12

**28.** *See* statute and case cited *supra* note 13.

**29.** *Id.*

**30.** *Id.*

*Brown*, 183 F.3d 1306, 1309 (11th Cir. 1999)). The Speedy Trial Act provides for the factors the Court must consider in making this determination: "[1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; [3] and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2). Upon consideration of the Speedy Trial Act's statutorily-enumerated factors, the Court finds the Indictment should be dismissed without prejudice.

## A. Seriousness of the Offense

In the instant case, there can be no question that the crime with which Defendant is charged is extremely serious.[31] Defendant was charged with conspiracy to commit a Hobbs Act robbery, and carrying and using a firearm in the commission of that robbery, which resulted in the death of a twenty-seven year old man. Although the government ultimately did not seek it, Defendant was facing the death penalty for his role in the conspiracy charged in this case, which further underscores the seriousness of this offense. As the Eleventh Circuit has previously found that less serious crimes are "incredibly" serious, the Court finds the offense with which Defendant is charged is among the most serious chargeable under the United States Code. *See, e.g., United States v. Wilson*, 633 Fed. Appx. 750, 753–54 (11th Cir. 2015) (affirming district court's conclusion that armed robbery of a suspected drug dealer is an "incredibly serious" offense).

As the Eleventh Circuit has instructed, "where the crime charged is serious, the court should dismiss only for a correspondingly severe delay." *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984). Defendant contends that while the offense

is serious, the length of the delay (which Defendant calculates as 332 days) nonetheless warrants dismissal with prejudice. As an initial matter, Defendant's calculation-by his own admission-failed to account for large periods of time which are considered excludable under the Act. The proper calculation of the delay is 200 days, which is properly characterized as a "severe" delay. *See* Part II.F. *supra; see also United States v. Williams*, 314 F.3d 552, 560–61 (11th Cir. 2002) (finding a 68–day delay that was 2.27 times the length of the 30–day speedy-trial period was a "severe" violation of the Act). Nonetheless, the Eleventh Circuit has concluded that even a severe delay does not *per se* warrant dismissal with prejudice. *Id.* at 560 (balancing "extremely serious" federal drug charges against a "severe" sixty-eight day violation of the Act). Other courts have similarly held that equivalent delays and even longer delays beyond the Act's periods did not compel dismissal with prejudice. *See, e.g., United States v. Barnes*, 159 F.3d 4, 17 (1st Cir. 1998) (delay of 121 non-excludable days beyond 70–day speedy-trial period); *United States v. Jones*, 213 F.3d 1253, 1256–58 (10th Cir. 2000) (delay of more than 300 non-excludable days beyond speedy-trial period); *United States v. Johnson*, 29 F.3d 940, 945–46 (5th Cir. 1994) (delay of "at least 118" non-excludable days beyond 70–day speedy-trial period); *United States v. Saltzman*, 984 F.2d 1087, 1092–95 (10th Cir. 1993) (delay of nearly six months beyond 30–day speedy-indictment period).

Upon balancing the severity of the delay in this case against the deathly seriousness of the offense, the Court concludes that this factor weighs heavily in favor of dismissal without prejudice.

---

**31.** Indeed, Defendant rightly conceded in his pleadings and at oral argument that the of-

fenses with which he is charged are serious within the meaning of *Taylor.*

## B. Facts and Circumstances Leading to Dismissal

The second factor focuses on the "culpability of the delay-producing conduct." *Williams*, 314 F.3d at 559 (citing *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988)). Defendant argues the facts and circumstances leading to dismissal support dismissal with prejudice. The argument Defendant makes relies primarily upon his professed lack of culpability in causing the delay; based upon his 1) objection to the trial date during the scheduling conference and 2) appeal of the pretrial detention order, in which he complained more than once that the trial date violated his speedy trial rights. Defendant asserts that, because he made his objections to the trial date known "well within the time required for these Speedy Trial Act violations to be averted and remedied[,]" he has zero culpability for the delay-producing conduct. DE 480 at 3–4.

While the Supreme Court has clearly stated, "[a] defendant has no duty to bring himself to trial" and the Act may not be waived by a defendant's inaction, Defendant's argument misses the mark. *See Barker v. Wingo*, 407 U.S. 514, 525, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In this case, Defendant is largely responsible for the delay.

As described in Part II.F, the speedy-trial clock began running in this case on September 2, 2011, following the return of the initial indictment against Defendant and his co-conspirators, which charged the Defendants with a crime punishable by death. Eleven days later, the Court promptly brought the parties together to discuss the scheduling of the trial of this matter. At the scheduling conference, Defendant's co-conspirators stated that they would need between five and seven months to make their *initial* death penalty protocol submissions to the U.S. Attorney for the Southern District of Florida. When Defendant objected to the setting of the trial so far out in time, the Court stated that such a setting might give rise to grounds supporting a motion for severance. Upon consideration of everything presented at the scheduling conference, and finding additional time was necessary for the parties to navigate the death penalty protocol, the Court granted the government's motion to set the trial date one year away and entered a scheduling order providing for same.

It is black letter law that reasonable delays necessary for the trial of co-defendants toll the speedy-trial period for defendants who have not been granted severances. 18 U.S.C. § 3161(h)(6). Yet, despite his knowledge of the trial date and his belief that his circumstances were different from those of his co-conspirators, Defendant did not move to be severed from his co-conspirators and tried earlier in a separate trial by himself. Making due process and speedy trial arguments in the context of a motion for pre-trial release is a far cry from seeking a severance and an immediate trial. The Court reasonably concluded that Defendant's failure to seek a severance was an implicit agreement to the necessity of the delay for the purpose of preparing for trial. This is further buttressed by the fact that, during the four-and-one-half months following the entry of the scheduling order, Defendant engaged in a lengthy death penalty mitigation investigation, which culminated in his filing of a *preliminary* submission to the U.S. Attorney for the Southern District of Florida on February 3, 2012. Defendant then waited approximately six-and-one-half months beyond the expiration of the speedy-trial clock before moving for dismissal based on his perceived violation of the Act.

Under the circumstances present in this case, Defendant bears the majority of the

culpability for the delay-producing conduct due to his failure to seek a severance, failure to follow the Local Rules by filing periodic speedy-trial reports containing his calculations of the speedy-trial period, and failure to move for dismissal in a timely fashion. *See United States v. Miranda*, 835 F.2d 830, 834 (11th Cir. 1988) (finding defendant was "not blameless" due to his violation of the local rule requiring defendant to file Speedy Trial Act reports); *see also United States v. Fountain*, 840 F.2d 509, 513 (7th Cir. 1988) ("A defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention.").

The Court also notes, as the Eleventh Circuit's opinion in this case makes clear, the Court is also not without blame for the violation of the Act. The Court inadvertently failed to make the necessary ends-of-justice findings at the time the scheduling order was entered.[32] Additionally, thirteen months later, the Court, referring to "... an agreement by all counsel" to the October 9, 2012 trial commencement date, misstated from memory that the parties had agreed to the October trial date. If not for these two errors, it is unlikely that the record would have supported a reversal of the denial of the motion to dismiss. However, on balance, the blame for the delay in this case falls squarely at Defendant's feet, and the second factor also weighs heavily in favor of dismissal without prejudice.

## C. Impact of Reprosecution on the Administration of the Act and on the Administration of Justice

 Regarding the third factor, the Eleventh Circuit has repeatedly recognized, "[i]n applying this factor, there is almost always 'some tension between the

administration of the Act and the administration of justice.'" *Williams*, 314 F.3d at 559 (quoting *United States v. Godoy*, 821 F.2d 1498, 1506 (11th Cir. 1987)). Indeed, the two standard arguments that arise when examining these factors may "neutralize each other" because "'[d]efendants can always argue that the minimal sanction of dismissal without prejudice takes the teeth out of the Act's requirements'" and "'the government can always argue that reprosecution furthers the public's interest in bringing criminals to trial.'" *Id.* at 559–60 (quoting *Godoy*, 821 F.2d at 1506). For this reason, courts have authority to consider "such aggravating and mitigating factors as the length of the delay and the prejudice to the defendant." *Id.* In essence, the Court is to weigh any argument that dismissal without prejudice undermines the effect of the Act against the converse argument that "re-prosecution furthers the public interest in bringing criminals to trial." *United States v. Hunter*, 319 Fed.Appx. 758, 760–61 (11th Cir. 2008).

In considering this factor, the Court is mindful of the following:

First, Defendant testified at trial, admitted the crime occurred, and admitted to his role in the crime. Defendant has already presented his duress defense to a jury, and the jury unanimously found him guilty of committing a Hobbs Act robbery, conspiring to commit a Hobbs Act robbery, and carrying and using a firearm in furtherance of a crime of violence. While Defendant has speculated as to various ways he may be prejudiced in a future trial, he has not demonstrated that he will be unable to present his duress defense anew, or that his ability to present any other specified defense may be prejudiced.

---

**32.** Findings which would have been amply supported by the record as it stood at the time.

Furthermore, Defendant's claim that the government profited and Defendant was prejudiced because *the delay* allowed the government to secure the cooperation of Defendant's co-conspirators is pure speculation.

Second, if the Court were to grant a dismissal *with* prejudice, it would remove from a future trial jury's consideration a grand jury's finding (as well as the previous trial jury's finding) that Defendant engaged in deathly serious criminal conduct.

As to aggravating factors, Defendant contends that "the length of the delay is sufficient in and of itself to warrant a dismissal with prejudice, allowing for re-prosecution more than five years after he was indicted is an 'extraordinary' delay which is presumptively prejudicial." DE 480 at 6. Additionally, Defendant claims he suffered actual prejudice by "being denied his constitutional right to his counsel of choice at trial and allowing the government extra time to obtain witnesses to testify against [him.]" *Id.*

With respect to the delay in this case, as an initial matter, Defendant's argument that a dismissal without prejudice would countenance a five-year delay between indictment and reprosecution fails to discern between Sixth Amendment speedy trial due process caselaw and Speedy Trial Act caselaw. When considering a violation of the Act, the relevant time period the Court must take into consideration is not the total time between the initial indictment and any eventual reprosecution (which would include not only the delay beyond the expiration of the speedy-trial clock, but also an additional three-and-one-half years while this matter was pending on appeal before the Eleventh Circuit). *See United States v. Williams,* 314 F.3d at 560 (con-

sidering length of delay between expiration of speedy-trial period and first trial). As stated previously, Defendant has failed to adequately demonstrate any prejudice he suffered due to the pre-trial delay in terms of his ability to present a defense at trial.

■ In the Sixth Amendment context, a five year delay *is* presumptively prejudicial; however, this is not the end of the matter. In assessing a Sixth Amendment speedy-trial delay claim, courts are required to apply the four factors set out in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972): 1) the length of the delay; 2) the reasons for the delay; 3) the defendant's assertion of the right to speedy trial; and 4) prejudice to the defendant. The instant order has already addressed each of these factors except for the fourth (which has only been addressed in part),[33] and as to each of the other three factors, the circumstances of this case do not warrant dismissal with prejudice, as previously stated. With respect to the fourth factor, the Court finds that Defendant has failed to establish he is prejudiced by the additional delay which occurred while this matter was on appeal, while the instant motions have been pending before this Court, and during the time within which the government must re-indict Defendant, if it chooses to do so.

The Court would further note that this case has already been tried once, which has the effect of locking in the statements of witnesses, and Defendant has the benefit of seeing the government's presentation of evidence against him. In fact, it might more forcefully be argued that the government is prejudiced by the delay since it has the burden of proof and must now locate witnesses, whose memories may

---

**33.** The Court already found that Defendant has failed to establish prejudice vis-à-vis the 200–day delay between the expiration of the speedy-trial period and the commencement of the trial.

have faded. These facts further mitigate against the presumption that the delay was prejudicial.

Finally, with respect to the argument that Defendant is prejudiced, and this case is marred, by a structural error due to the alleged denial of Defendant's counsel of choice, the Court finds the cases upon which Defendant relies are inapposite to the factual scenario present in this matter. *See United States v. Gonzalez–Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (court wrongfully denied defendant's counsel's motion to appear *pro hac vice* ); *see also United States v. Jimenez–Antunez*, 820 F.3d 1267 (11th Cir. 2016) (court wrongfully denied motion to withdraw by retained counsel and request for appointed counsel). While it is, of course, axiomatic that the wrongful denial of counsel of choice is a structural error for which no additional showing of prejudice is necessary, in this case there was no *act* by the Court or the government by which Defendant was *wrongfully denied* the services of Mr. Matthewman.

That Defendant's first counsel of choice became a United States Magistrate Judge, and thus became *unavailable* to continue as Defendant's counsel, is no more a wrongful denial of counsel of choice than if Defendant's counsel had passed away or retired during the pendency of this action. The Court further notes that Defendant was appointed new counsel when Mr. Matthewman knew he would become unavailable in the future, and that neither Defendant nor his new counsel sought his new counsel's removal from the case. Accordingly, while the Court accepts that Defendant would have preferred to go to trial with Mr. Matthewman as his attorney, the Court rejects that Mr. Matthewman's unavailability is a structural error for which no additional showing of prejudice is necessary, and further rejects that Defendant was prejudiced by going to trial with his appointed counsel, Mr. Sakin.

Accordingly, the Court finds that the public's interest in reprosecution outweighs any prejudice Defendant may have suffered by virtue of the delay in this case.

## IV. CONCLUSION

Balancing the three statutory factors, the Court finds dismissal without prejudice is the appropriate result in this case. The charges against Defendant are among the most serious chargeable under the United States Code; the blame for the admittedly severe delay beyond the speedy-trial period is largely borne by Defendant; and Defendant has failed to establish he was prejudiced by the delay to an extent that outweighs the public's interest in reprosecution. Therefore, all three factors weigh in favor of dismissal without prejudice.

Accordingly, it is **ORDERED, ADJUDGED,** and **DECREED** that Defendant's motion to dismiss the indictment with prejudice (**DE 480**) be, and the same is, hereby **DENIED;** and the government's motion to dismiss the indictment without prejudice (**DE 479**) be, and the same is, hereby **GRANTED.**

**IT IS FURTHER ORDERED** and **ADJUDGED** that the Superseding Indictment (**DE 222**) be, and the same is, hereby **DISMISSED WITHOUT PREJUDICE.**

**DONE** and **ORDERED** in Chambers at the Sidney M. Aronovitz United States Courthouse, Key West, Florida this 22nd day of February, 2017.