[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12044

_____

D.C. Docket No. 1:11-cr-20613-JLK-5


UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

versus

URI AMMAR,

                                                        Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 29, 2016)

Before WILSON, JULIE CARNES, and EBEL,[*] Circuit Judges.

WILSON, Circuit Judge:

_____

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

Uri Ammar appeals his convictions and total sentence of life imprisonment after a jury found him guilty of robbery, conspiracy to commit robbery, and using or carrying a firearm in relation to a crime of violence.  Ammar contends that the district court erred by failing to dismiss his indictment pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161–3174.  Given the Supreme Court's controlling decision in *Zedner v. United States*, 547 U.S. 489, 126 S. Ct. 1976 (2006), we agree and conclude that, in granting a one-year continuance, the district court failed to comply with the Speedy Trial Act.  Accordingly, the indictment must be dismissed.  We reverse and remand for the district court to consider whether the dismissal should be with or without prejudice.

## I.    THE SPEEDY TRIAL ACT

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."  U.S. Const. amend. VI.  To strengthen this constitutional mandate, Congress passed the Speedy Trial Act.  The Act provides that the trial of any defendant who pleads not guilty must begin within 70 days of either the filing of the indictment or the date the defendant first appears before a judicial officer to answer the charges, whichever occurs later.  *See* 18 U.S.C. § 3161(c)(1).  If a defendant is not tried within that window of time, then the district court must grant the defendant's motion to dismiss the indictment.  *See*

2

*id.* § 3162(a)(2).  However, the 70-day time period may be tolled for certain statutorily enumerated reasons.[1]

Relevant here, a district court may grant a continuance of the trial date when the "ends of justice" support the continuance.  *See id.* § 3161(h)(7)(A).  To do so, the district court must consider certain factors, such as whether the failure to grant the continuance would "result in a miscarriage of justice," *id.* § 3161(h)(7)(B)(i); whether due to the nature of the case (or other factors), the case is too complex to reasonably expect adequate preparation within the Speedy Trial Act's time limits, *id.* § 3161(h)(7)(B)(ii); or whether a refusal to continue the case would deny the defendant "reasonable time to obtain counsel," or would unreasonably deny either party time for "effective preparation," *id.* § 3161(h)(7)(B)(iv).

After considering these statutory factors, the district court is required to "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of [a] continuance outweigh the best interests of the public and the defendant in a speedy trial."  *Id.* § 3161(h)(7)(A).  Considering this provision, the Supreme Court found in *Zedner* that "the Act requires express findings," and "without on-the-record findings, there can be no exclusion" of time past the 70-day requirement because the Speedy Trial

---

[1] The Speedy Trial Act specifically lists seven separate periods of delay that may be excluded from the 70-day requirement.  *See* 18 U.S.C. § 3161(h).  Only the seventh, the catch-all "ends of justice" continuance, is at issue in this case.

Act, with "procedural strictness," "demands on-the-record [ends-of-justice] findings." 547 U.S. at 506–07, 509, 126 S. Ct. at 1989, 1990.[2]

Moreover, a defendant's agreement to waive the protections of the Act cannot, by itself, justify an ends-of-justice continuance because the public interest in a speedy trial is also protected by the Act.[3] *See id.* at 500–01, 126 S. Ct. at 1985 (finding that a defendant cannot simply waive or "opt out of the Act"); *United States v. Mathurin*, 690 F.3d 1236, 1242 (11th Cir. 2012). The best interests of the parties—and even those of the court—cannot alone justify deviation from the Act's requirements, absent the determination that those interests outweigh the public interest. "[T]he Act was designed with the public interest firmly in mind," and "there are many cases . . . in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest." *Zedner*, 547 U.S. at 501–02, 126 S. Ct. at 1985–86.

Accordingly, *Zedner* held that agreement by the parties cannot be the only basis for granting a continuance. A finding that a continuance is justified solely

_____

[2] The *Zedner* Court, interpreting an older version of the Act, refers to the pertinent section as § 3161(h)(8). In a 2008 amendment, this section was redesignated as (h)(7). Pub. L. No. 110–406 § 13(3) (2008). The text of the statutory section did not change.

[3] To be clear, a defendant cannot waive the Act's timeliness requirements. The district court bears the burden of making ends-of-justice findings and placing them on the record irrespective of the defendant's agreement to a delay. *See Zedner*, 547 U.S. at 506–07, 126 S. Ct. at 1988–89. However, a defendant may waive his or her right to *dismissal* of the indictment premised on a violation of the Act by failing to move for dismissal prior to trial. *See* 18 U.S.C. § 3162(a)(2). Here, Ammar timely moved for dismissal based on the Speedy Trial Act violation. Thus, the waiver provision does not apply.

because the parties agreed to it is not a proper ends-of-justice finding.  The district court must make "on-the-record findings that the ends of justice served by granting the continuance outweigh" the defendant's *and the public's* interests in a speedy trial.  *See id.* at 498–99, 126 S. Ct. at 1984.

The Act does not stipulate when the district court must make these findings; that is, whether the findings must be made contemporaneously with the granting of an ends-of-justice continuance.  *See id.* at 506–07, 126 S. Ct. at 1989 ("Although the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance . . . the Act is ambiguous on precisely when those findings must be set forth, in the record of the case." (alterations adopted and internal quotation marks omitted)).  However, the *Zedner* Court opined that a trial court should put its findings regarding an ends-of-justice continuance on the record *at least* by the time it rules on the defendant's motion to dismiss for a speedy trial violation.  *Id.* at 507 & n.7, 126 S. Ct. at 1989 & n.7 (noting that the "best practice" is for the court to state the reasons simultaneously when granting the continuance).  Thus, we look to see whether the district court considered the relevant factors and placed its ends-of-justice findings on the record when it continued Ammar's trial beyond the Act's 70-day timeframe, or, at the latest, by the time it ruled on Ammar's motion to dismiss for a speedy trial violation.

5

## II.    BACKGROUND

In this case, the clock for the 70-day calculation began on September 1, 2011, when a federal grand jury returned an indictment against Ammar and four others for their involvement in the armed robbery and killing of a Brink's money courier.[4]  Ammar pleaded not guilty, and a magistrate judge ordered Ammar detained pending trial.  Subsequently, on September 13, 2011, the district court held a scheduling conference with Ammar, his codefendants, and the government to discuss the trial date.  The same day, the court entered an order scheduling trial to begin October 9, 2012.

Ammar then appealed the magistrate judge's detention order, contending that the district court had set an extended trial date over his objection and that detention pending a trial set for more than a year from the date of the indictment violated his due process and speedy trial rights.  However, the district court denied the appeal on December 1, 2011.  Over a year after the original indictment, on September 17, 2012, a federal grand jury returned a four-count superseding indictment against Ammar.[5]  Ammar moved to dismiss the indictment pursuant to

---

[4] Ammar appeared before the court on the charges contained in the complaint before he was first indicted.  Accordingly, the indictment date—the later of the two—is the point at which the 70-day period began to run.  *See* 18 U.S.C. § 3161(c)(1).

[5] The superseding indictment rearranged Ammar's charges, splitting what was originally styled as one count into two separate counts.  Therefore, the "superseding indictment do[es] not reset the speedy-trial timetable." *See United States v. Jones*, 601 F.3d 1247, 1254 (11th Cir. 2010).

the Speedy Trial Act, which the government opposed.  The district court considered the matter at a calendar call on October 4, 2012.  After hearing from both parties, the court denied Ammar's motion during the calendar call.

On the first day of trial, Ammar again raised his motion to dismiss pursuant to the Speedy Trial Act.  The court denied the motion and the case proceeded to trial.  At the conclusion of the trial, the jury returned a verdict of guilty as to three counts and not guilty as to one count.  Thereafter, the district court sentenced Ammar to life imprisonment.  Ammar timely appealed, raising issues regarding the timeliness of trial, his conviction, and sentencing.  We address only his claim under the Speedy Trial Act because we find that this threshold issue is dispositive.

We review de novo the denial of Ammar's motion to dismiss based on a violation of the Speedy Trial Act, and any factual determinations by the district court with regard to excludable time receive clear error review.  *See United States v. Harris*, 376 F.3d 1282, 1286 (11th Cir. 2004).  We must determine whether any time between Ammar's indictment on September 1, 2011, and the start of Ammar's trial on October 9, 2012, can be excluded, bringing Ammar's trial within the Act's 70-day requirement.  Crucial to this inquiry is whether the district court weighed the relevant interests and made the necessary ends-of-justice findings on the record.  *See Zedner*, 547 U.S. at 507, 509, 126 S. Ct. at 1989, 1990.  These findings may be oral or written.  Therefore, we look to both the conversations at

7

the hearings before the district court and to written parts of the record. Here, the parties point to two dates in the record: the September 2011 scheduling hearing and order setting the trial date and the October 2012 calendar call denying Ammar's motion to dismiss. We describe both instances before turning to our analysis.

## A. September 2011 Scheduling Hearing and Order

On September 13, 2011, the district court heard from the parties at a scheduling conference and then, on the same day, entered its order scheduling trial for a year later. At the hearing, the government informed the court that Ammar and his co-defendants were charged with crimes for which they could face the death penalty, and the Department of Justice (DOJ) would need between five months and one year to determine whether to seek that option. The DOJ's death penalty process included a step in which the defendants could present mitigating factors. Some co-defendants therefore requested a lengthy continuance to afford them time to prepare such a presentation. Concurring with these defendants' request for a delayed trial date, the government requested a trial date one year out.

In contrast, Ammar stated that he did not believe the government would seek the death penalty against him. For this reason, he believed he could be ready to make his presentation within thirty days. In addition, Ammar opposed a lengthy continuance because he remained in custody and the district court had not granted his request for bond. As such, Ammar was unwilling to agree to the lengthy

8

continuance sought by some of his co-defendants.  Instead, he asked for a December 2011 trial date, or in the alternative, that the district court review the magistrate judge's decision regarding pretrial detention.

After the hearing, the district court issued a written order setting the case for trial.  The order stated that the court had been advised during the discussion the same day "that a reasonable time allowance of approximately one year would be necessary for the parties to implement the newly-amended death policy procedures in order to permit careful consideration by the [DOJ] of whether or not this case will proceed to trial as a 'death case.'"  It also noted that "[s]everal defense counsel advised the Court that there are other procedures that will be necessary for court-appointed counsel to follow to obtain approval from the Eleventh Circuit Court of Appeals for a budget to handle a potential death case," while others "indicated that they were opposed to a trial date set so far in the future."  The order concluded: "After a thorough discussion, it became apparent that the Court's best efforts to get this case tried under its normal procedures of setting conflict-free trial dates within approximately 90–120 days is not a reasonable objective."  The court then directed the clerk of court to schedule the trial for October 9, 2012.

### B.  October 2012 Calendar Call

On October 3, 2012, Ammar moved to dismiss the September 17, 2012 superseding indictment pursuant to the Speedy Trial Act.  He noted that unless the

continuance granted by the court was excludable, the trial had not commenced within the 70 days required by the Act.  Citing *Zedner*, he further noted that the fact that some defendants had agreed to the continuance was not sufficient, by itself, to comply with the Speedy Trial Act.  Instead, the Act requires that, for all ends-of-justice continuances, the court make the appropriate findings set out in the statute.

The government opposed the motion.  The government acknowledged that the court had not used the phrase "ends of justice" in its order granting the continuance nor had it even mentioned the Speedy Trial Act, but it argued that the court had performed the balancing of interests required by § 3161(h)(7)(A).  Moreover, the government noted that, prior to ruling on the motion to dismiss, the court would be permitted to explicitly make the necessary ends-of-justice findings.  The government requested that the court make those findings, which it contended were supported by the reasons for a continuance offered at the September 13, 2011 status conference.

The district court addressed the matter at a calendar call on October 4, 2012.  The court first stated that the trial date was "by agreement of everybody."  Ammar corrected the court, replying that he had requested that trial be set for December 2011.  The court then stated that the delay "was caused by this death penalty statute and the law pertaining to setting trials."  Ammar explained that the district

court's order setting the trial date did not "set forth excludable time in the public [sic] best interest or in the interest of the defendant." The court responded, "I asked each of you if you agreed to this, and everybody said yes," and "[e]verybody knew they were waiving the Speedy Trial Act."

Although the government stated that it believed the court had engaged in the necessary balancing of factors and that the court was not required to "use some magic words, [like] the words 'ends of justice,'" the government again requested that the court make an explicit ends-of-justice finding. Specifically, the government requested the court to hold "that when [it] issued that order it was in the ends of justice." The court replied, "At the end of the day, if they all agree to [the trial date], that's always been adequate." The court disagreed that it had to say any words other than what date it was setting the trial. Further, the court opined that it had been Ammar's duty to advise the court if the Speedy Trial Act was being violated and to request a trial.

The court then asked the government, "What magic words are left out of the order that I entered? Should I put in there that [counsel for one of the co-defendants] couldn't go to trial on the September 15th calendar because he has a conflict, and somebody else couldn't go later or before?" The government responded that it thought the court had earlier set out sufficiently the reasons for the continuance, but it once more urged the court to make an ends-of-justice

11

finding on the record, to hold "that [the continuance] outweighs the public [sic] and the defendant's interest in a speedy trial. That would make that time excludable."

The court inquired whether the government was arguing that the motion to dismiss should be denied. The government responded, "I think if your Honor feels it needs to be excluded and utter those magic words, you should." The court responded that it did not "wish to go back and change an order that [it had already] entered, that [it] felt was perfectly acceptable, as a matter of fact agreeable with everybody." Moreover, the court explained, "that's the reason I entered the order." The court continued, "It was in the interest of—both sides had an interest. The government had an interest in not having to try the case two or three times or whatever. The defendants had an interest, and we paid great sums of money to especially hire death penalty counsel. They had a big interest in seeing if they could persuade the [DOJ] not to seek the death penalty, which they did ultimately. That was a big advantage to them. . . . It was fair to everybody."

The government then stated that, "regardless of what the defendant says, the Court can make a finding that the ends of justice outweigh—a continuance in the interest of justice." The court replied, "That's why I'm overruling the defense [sic] request to move the case forward. When I'm granting a time that everybody wants, there's no need for it. It's pointless." The court then denied Ammar's

motion, "in the interest of fair play in handling these cases and everything that is reasonable and decent, the effort I put into achieving a trial date that was agreeable to everybody and worked to everybody's advantage."

## III.    DISCUSSION

### A. Speedy Trial Act Violation

Our analysis is guided by the language of the Speedy Trial Act and the Supreme Court's interpretation of that language in *Zedner*.  The Act states that delay resulting from a continuance either by the district court or at the request of a party is excludable from the 70-day period in which the trial must begin if the court puts on the record "its reasons for finding that the ends of justice served by the granting of [a] continuance outweigh" the public's and defendant's interests in a speedy trial.  *See* 18 U.S.C. § 3161(h)(7)(A).  *Zedner* makes clear that the findings must be expressly made on the record.  *See* 547 U.S. at 506–07, 126 S. Ct. at 1988–89 (stating that the Act, with "procedural strictness," "demands *on-the-record* findings"; thus, the district court must make "an *express* finding on the record about the ends-of-justice balance" (emphasis added and internal quotation mark omitted)).  Additionally, *Zedner* held that the parties cannot simply agree to a continuance and thus waive the Act's 70-day requirement.  *See id.* at 500–03, 126 S. Ct. at 1985–87 (finding that "mere consent or waiver" will not result in excludable time).  Hence, a court's finding that a continuance is justified solely

13

because the parties agreed to the continuance is not a proper ends-of-justice finding. *See id.* at 502, 126 S. Ct. at 1986. If the district court fails to comply with these requirements, then the resulting delay will not constitute excludable time from the 70-day calculation.

Based on the record before us, we conclude that the district court ran afoul of *Zedner.* The court stated several times that it had granted the continuance because all of the parties had agreed to it, thereby indicating its belief that the Speedy Trial Act could be waived. And when the government repeatedly advised the court that the continued time period could be excluded if the court simply made an express ends-of-justice finding, the court refused to declare that the ends of justice supported the continuance, repeating its belief that the "parties' agreement" provided a sufficient reason to justify the continuance.

Specifically, during the October 2012 calendar call, the district court ruled on Ammar's motion to dismiss for the Speedy Trial Act violation. The court expressed its understanding that the trial date was "by agreement of everybody," emphasizing repeatedly "[e]verybody knew they were waiving the Speedy Trial Act," and stating, "if they all agree . . . that's always been adequate." In fact, the district court said it would not make the ends-of-justice findings because they were unnecessary, stating, "When I'm granting a time that everybody wants, there's no need for it. It's pointless." The court's repeated assertion that it did not have to

14

make the ends-of-justice findings because the parties agreed to the trial date is problematic for three reasons.

First, the district court's assertion is factually inaccurate and thus clearly erroneous—not all of the parties agreed to the trial date, as evidenced by Ammar's repeated objection to the length of the delay.  Second, it is legally incorrect because an agreement by the parties does not eliminate the requirement that the court make a proper ends-of-justice finding.  *Zedner* makes clear that the parties cannot waive the Speedy Trial Act's requirement.  The district court did not comply with this rule, as it based its decision to continue the case on the parties' agreement.  Again, the court stated to the parties:  "Everybody knew they were waiving the Speedy Trial Act," and the date was "agreeable with everybody, and *that's the reason* I entered the order."  (emphasis added).  While we do not fault a district court, when considering a defendant's motion to dismiss based on an alleged Speedy Trial Act violation, for noting that the defendant had agreed to the continuance, this agreement cannot be the sole basis for the continuance.  The court must consider both the defendant's interest and the public's interest in a speedy trial.  *Zedner*, 547 U.S. at 501, 126 S. Ct. at 1985.  Third, the court did not just fail to make an ends-of-justice finding—it refused to make this finding.  Where a district court refuses to make such a finding, notwithstanding the repeated entreaties of the government that it do so, we are left with little choice but to

15

conclude that the district court did not think that the ends of justice warranted the continuance. Such a record makes it difficult to affirm the court's decision here, even if we might otherwise conclude that there were adequate reasons to justify the continuance.

The government has argued, however, that the district court's failure to specifically utter the "magic words," such as "ends of justice," should not be dispositive. We do not necessarily disagree with this position. But this appeal cannot be properly characterized as a "magic words" case in which the district court simply neglected to utter certain precise words.[6] Again, when confronted with the request to make the findings, the court expressly declined to do so, stating that the continuance was based solely on the parties' agreement. Thus, we need not opine as to precisely which or specifically how many words a district court must place on the record before the findings requirement is met. Instead, the court's explicit declination to make ends-of-justice findings on the record and its stated reason for continuance are dispositive.

In sum, our review of the record leads us to conclude that the district court did not make the proper ends-of-justice findings to permit tolling of the 70-day

---

[6] That we recognize the possibility that a finding that fails to recite precisely the words called for by the statute might pass muster does not mean that we encourage deviation from the statutory language. It is simple enough for a district court to create a template that sets out exactly the statutory words required to be used, and to recite those words to explain a continuance that is otherwise based on the factors set out in the statute. Doing so is a prudent step that reduces the likelihood of future litigation concerning that order.

time period in which Ammar should have gone to trial.  We hold that the Speedy

Trial Act was violated when Ammar's trial did not begin until over a year after his

indictment.

## B.  Remedy

Having determined that Ammar's rights under the Speedy Trial Act were

violated, we turn to the appropriate remedy.  Once again, the plain language of the

Act controls: dismissal of Ammar's charges is required.  The Act states that, when

a trial does not begin within the required period of time, "the information or

indictment *shall be dismissed* on motion of the defendant."  18 U.S.C. § 3162(a)(2)

(emphasis added).  Thus, although a trial court is ordinarily given "great discretion

to make decisions concerning trial schedules and to respond to abuse and delay

where appropriate," the Act "confines the exercise of that discretion more

narrowly, mandating dismissal of the indictment upon violation of precise time

limits, and specifying criteria to consider in deciding whether to bar

reprosecution."  *United States v. Taylor*, 487 U.S. 326, 343–44, 108 S. Ct. 2413,

2423 (1988).  The Supreme Court specified in *Zedner* that, "if a judge fails to make

the requisite findings regarding the need for an ends-of-justice continuance, the

delay resulting from the continuance must be counted, and if as a result the trial

does not begin on time, the indictment or information must be dismissed."  547

U.S. at 508, 126 S. Ct. at 1989.  The Act "does not permit those findings to be made on remand."[7]  *Id.* at 506, 126 S. Ct. at 1988.

As discussed above, the district court failed to make the requisite findings, and Ammar's trial, which began over a year after his indictment, violated the Speedy Trial Act's 70-day time period.  Accordingly, we reverse and remand to the district court with instructions to dismiss the charges.  This dismissal may be with or without prejudice—we leave that determination to the district court.[8]

## IV.    CONCLUSION

A criminal defendant's right to a speedy trial is "one of the most basic rights preserved by our Constitution."  *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S. Ct. 988, 995 (1967).  Congress chose to safeguard this important right through the rigid procedural requirements of the Speedy Trial Act.  Those requirements were not met here.  Therefore, we have no choice but to vacate Ammar's conviction.  We reverse and remand with instructions for the district court to dismiss the charges against Ammar and determine, after consideration of the

---

[7] The Court expressly rejected the application of harmless-error review, finding that such an inquiry does not "square with the Act's categorical terms."  *Zedner*, 547 U.S. at 508, 126 S. Ct. at 1989–90.  This result may seem inflexible; however, as the Court found, the Act's requirements are intentionally procedurally strict.  *See id.* at 509, 126 S. Ct. at 1990.

[8] The Act provides the statutory factors to guide the district court in making this decision.  The court must consider, *inter alia*, the "seriousness of the offense," the circumstances leading to dismissal, and the impact that reprosecution would have on the administration of the Act and justice.  Examination of each statutory factor is necessary before the district court may conclude that the charges should be dismissed with prejudice.  *See Taylor*, 487 U.S. at 333, 108 S. Ct. at 2417–18.

statutory factors enumerated in the Act, whether the dismissal should be with or without prejudice.

**REVERSED AND REMANDED.**