**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1265
_____

CHAL KENNEDY, JR.,
Appellant

v.

SUPERINTENDENT DALLAS SCI; DISTRICT
ATTORNEY PHILADELPHIA; ATTORNEY GENERAL
PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-2968)
Honorable Cynthia M. Rufe, U.S. District Judge
_____

Argued May 25, 2022

Before:   KRAUSE, PHIPPS, *Circuit Judges*, and
STEARNS[*], *District Judge.*

(Filed: October 11, 2022)

Peter F. Andrews [**ARGUED**]
Matthew Stiegler
Nancy Winkelman
Carolyn Engel Temin
Lawrence S. Krasner, District Attorney of Philadelphia
Office of the District Attorney
Three South Penn Square
Philadelphia, Pennsylvania 19107
          *Counsel for Appellees*

Elizabeth Brown [**ARGUED**]
Brendan Clemente
Lewis Hallowell
Kendall Huennekens
Duke University School of Law
210 Science Drive
Box 90360
Durham, North Carolina 27708

---

[*] Honorable Richard G. Stearns, United States District Court Judge for the District of Massachusetts, sitting by designation.

Sean E. Andrussier
Womble Bond Dickinson
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601

*Court Appointed Amicus Curiae for Appellant*

_____

OPINION OF THE COURT
_____

**STEARNS**, *District Judge*.

The Sixth Amendment guarantees a criminal defendant a right to a speedy trial. Petitioner Chal Kennedy, Jr., was not a fortunate son. On August 17, 2009, Kennedy and his father, Chal Kennedy, Sr., were arrested by Philadelphia police *in flagrante delicto* during an armed home invasion. Fifty months later, on October 15, 2013, after numerous delays that will be described, the son and father went on trial before a jury in the Court of Common Pleas. On October 23, 2013, both were convicted. Chal Kennedy, Jr., was subsequently sentenced to ten to fifteen years of imprisonment. After failing to obtain redress under the Pennsylvania Post-Conviction Relief Act

(PCRA), Kennedy's appeal was rejected by the Pennsylvania Superior Court—his court of last resort.[1]

On July 18, 2019, Kennedy filed this *pro se* habeas petition in the Eastern District of Pennsylvania, arguing that his right to a speedy trial had been violated. The Magistrate Judge recommended that the District Court deny Kennedy's petition on grounds of procedural default. The Magistrate Judge also adopted the state-court finding that only sixteen days of the fifty-month delay in bringing Kennedy to trial were attributable to the Commonwealth. On January 8, 2021, the District Court overruled Kennedy's objections to the Magistrate Judge's Report and Recommendation and additionally held his petition to be "without merit."[2] The District Court declined to issue a Certificate of Appeal.

On September 10, 2021, we agreed to hear Kennedy's petition and appointed *pro bono* counsel.[3] We identified two

---

[1] The Pennsylvania Supreme Court refused to grant Kennedy's petition for an allowance of appeal; however, under Pennsylvania law, the state Supreme Court is outside the appellate review process for purposes of habeas exhaustion. *See Lambert v. Blackwell*, 387 F.3d 210, 232-34 (3d Cir. 2004).

[2] On March 17, 2021, the District Court denied a motion to reconsider.

[3] We are grateful to the students from Duke Law's Appellate Litigation Clinic and their advisor, Sean E. Andrussier, for accepting the assignment. Student Elizabeth Brown superbly represented Kennedy at oral argument. We also commend Assistant District Attorney Peter F. Andrews for

4

issues for appeal: "(1) whether the District Court erred in finding Kennedy's Speedy Trial claim procedurally defaulted; and (2) if so, whether Kennedy's right to a Speedy Trial was violated." Dkt. #20. For the reasons to be stated, we conclude that Kennedy's procedural default was excused, and that his Sixth Amendment Speedy Trial Right was violated, and so will grant the petition and order Kennedy's release.

## BACKGROUND

At Kennedy's initial appearance on August 28, 2009, eleven days after he was arrested, Kennedy's attorney requested that his case be continued to September 23, 2009. This was followed by two continuances in September and October of 2009, which are not clearly explained on the docket.[4] The defense asked for pre-trial discovery and filed an omnibus pre-trial motion on January 4, 2010. The motion raised Kennedy's speedy trial rights under Pennsylvania's Prompt Trial Rule, Pa. R. Crim. P. 600, and requested dismissal of the case. At a January 20, 2010 conference, the defense requested that additional discovery be provided by the Commonwealth. On February 4, 2010, Kennedy's lawyer initiated a plea-bargaining request, but Kennedy rejected the

his skilled and fair-minded representation of the Commonwealth.

[4] The docket entry for the first continuance simply states: "Comm does not wish to sever." JA 200. For the second continuance, the docket entry reads: "Commonwealth request to have case listed for a Preliminary Hearing." JA 199.

Commonwealth's offer on February 19, 2010. On March 4, 2010, the trial judge recused himself without explanation. On March 8, 2010, Kennedy's attorney filed a motion for release from custody, arguing that Kennedy "ha[d] not been afforded his right to a mandatory prompt trial," and that the "Commonwealth ha[d] not exercised due diligence." JA 158. An April 1, 2010 conference with a newly assigned judge was postponed at the request of the Commonwealth because of the unavailability of the assistant district attorney.

On April 9, 2010, the court granted Kennedy's motion for release from custody and ordered him to strict house arrest. The trial, scheduled for December 6, 2010, was continued at the Commonwealth's request for "further investigation." JA 176. Kennedy, who was an active-duty Marine when he was arrested, was then transferred to the custody of his Marine Corps unit. Because of the pending indictment, he was not permitted to resume normal training activities and was relegated to "trash clean-up and paperwork." JA 462. After a further series of court-date postponements, during which Kennedy rejected a second plea offer, a jury trial was scheduled to begin on June 20, 2011. The trial date was continued when a co-defendant asked to substitute new counsel.

After a flurry of further continuances, attributable entirely to court congestion, a March 11, 2013 trial was aborted when the Commonwealth failed to secure the attendance of a prosecution witness in state custody. A subsequent June 3, 2013 trial date was continued for the same reason. Finally, on October 15, 2013, 1,520 days after Kennedy's arrest, his trial began. It did not go well for Kennedy. He was convicted by the jury of aggravated robbery, burglary, aggravated assault, criminal conspiracy, unlawful restraint, false imprisonment,

and various firearms offenses. Kennedy's lawyer failed to perfect a direct appeal of the convictions.

## JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Where, as here, the District Court's decision is based only on a review of the state court record, we exercise plenary review. *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 280 (3d Cir. 2016) (*en banc*).[5]

## DISCUSSION

**1.      Exhaustion of Remedies**

It has long been the rule that a federal court will not consider a federal-law challenge to a state court decision that was not "addressed by or properly presented to the state court that rendered the decision." *Hemphill v. New York*, 142 S. Ct. 681, 689 (2022) (quoting *Howell v. Mississippi*, 543 U.S. 440, 443 (2005) (*per curiam*)). To satisfy the presentment requirement, a petitioner need not resort to any "particular form of words or phrases" so long as the state court receives fair and timely notice that a federal claim is being made. *Id.* (quoting *Street v. New York*, 394 U.S. 576, 584 (1969)). Initially the Commonwealth argued that, by basing his appeal almost exclusively on the prompt trial guarantee of

---

[5] We recognize that our review is circumscribed by the limitations imposed by Congress in the Antiterrorism and Effective Death Penalty Act of 1996.

7

Pennsylvania Rule 600, Kennedy had failed to properly alert the state courts to his Sixth Amendment claim. The District Court, in adopting the Magistrate Judge's Report and Recommendation, agreed that Kennedy had failed to exhaust his federal constitutional claim by limiting his state court post-conviction proceedings to a challenge of his trial counsel's alleged ineffectiveness "for failing to raise a violation of Rule 600, the Pennsylvania speedy-trial rule." JA 3.

The Commonwealth has since reconsidered. It now concedes that Kennedy's Sixth Amendment claim has in fact been exhausted. When asked by this Court at oral argument to explain its reversal of position, the Commonwealth's attorney replied:

> I'd start by saying we are conceding procedural default here because our reading of the Superior Brief is that, and it is a close call, we don't disagree that it is a close call, under the factors set out in *McCandless* and *Wilkerson*, Kennedy did just enough to put the Superior Court on notice that he is asserting a claim that is related to his constitutional speedy trial right. . . . Our position is that our reading of the cases and our reading of the Superior Court brief is that it is fair presentation by Mr. Kennedy, and so it is our obligation to tell the Court what our position is on that.

Oral Argument at 43:10, https://www2.ca3.uscourts.gov/oralargument/audio/21-1265ChalKennedyv.SuperintendentDallas.mp3.

8

When pressed on the issue of whether Kennedy's arguably perfunctory references in his Superior Court brief to the Sixth Amendment, *Barker v. Wingo,* 407 U.S. 514 (1972), and a handful of Pennsylvania cases alluding to the Sixth Amendment right to a speedy trial were sufficient to put the Superior Court on notice of a federal claim, the attorney replied:

> I do. . . . The thrust of that brief is that he has speedy trial rights under the constitution and that those rights are being violating. Now, those rights are being violated in a mechanical way by the Commonwealth's Rule 600, which is a mechanical application, but they are also generally being violating by the fact that there is a federal speedy trial right that he hasn't been able to make out. . . . It is not uncommon for state courts to not pass on every claim that has been fairly presented under the federal standard.

Oral Argument at 44:25, https://www2.ca3.uscourts.gov/oralargument/audio/21-1265ChalKennedyv.SuperintendentDallas.mp3.

As we believe the Commonwealth's concession to be a product of careful consideration, we accept it as a waiver made expressly through counsel. *See* 28 U.S.C. § 2254(b)(3); *Sharrieff v. Cathel*, 574 F.3d 225, 230 (3d Cir. 2009). Doing so respects the Commonwealth's "primary authority for defining and enforcing the criminal law," *Engle v. Isaac*, 456 U.S. 107, 128 (1982), and obviates the need for us to address the issue further.

9

## 2. Sixth Amendment Claim

"[T]he right to a speedy trial is 'fundamental' and imposed by the Due Process Clause of the Fourteenth Amendment on the States." *Barker*, 407 U.S. at 515 (quoting *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967)). In assessing a constitutional speedy trial claim, we apply a four-factor test. We weigh the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. "All factors must be considered and weighed as no one factor is dispositive nor 'talismanic.'" *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993) (quoting *Barker*, 407 U.S. at 533).

The first factor, the length of delay, entails two inquiries.

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time.

*Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (citations omitted).

Here we have no difficulty concluding that the delay in this case—1,520 days, or nearly fifty months, from Kennedy's arrest on August 17, 2009, to the commencement of jury selection on October 15, 2013—was sufficiently long to trigger a *Barker* analysis.[6] *See Hakeem*, 990 F.2d at 760 (a delay of fourteen months is ordinarily sufficient to warrant inquiry into the additional *Barker* factors). If the threshold is met and the defendant establishes that the delay was due to "[n]egligence over a sufficiently long period," the burden shifts to the Commonwealth to justify the delay. *United States v. Velazquez*, 749 F.3d 161, 175 (3d Cir. 2014).

The second *Barker* factor assesses the reason for the delay and "whether the government or the criminal defendant is more to blame for that delay." *Doggett*, 505 U.S. at 651. In *United States v. Battis*, 589 F.3d 673, 679 (3d Cir. 2009), echoing *Barker*, we set out three categories of delay and the weight each category carries against the government: (1) "A deliberate effort by the Government to delay the trial 'in order to hamper the defense' weighs heavily against the Government"; (2) "[a] 'more neutral reason such as negligence or overcrowded courts' also weighs against the Government, though 'less heavily'"; and (3) "a valid reason, such as a missing witness, should serve to justify appropriate delay." 589 F.3d at 679 (quoting *Barker*, 407 U.S. at 531). On the other hand, "delay caused by the defense weighs against the

---

[6] The Commonwealth agrees that "the length of the delay[] strongly favors Kennedy." Commonwealth's Br. 25.

11

defendant," including "delay caused by the defendant's counsel." *Vermont v. Brillon*, 556 U.S. 81, 90–91 (2009).

Kennedy argues that he does not bear more blame than the Commonwealth for the fifty-month delay preceding his trial. He contends that only the delay consumed by his unsuccessful attempt to secure an acceptable plea bargain and the assented-to continuance request by a co-defendant is properly attributable to him. The Commonwealth, for its part, while accepting responsibility for forty months of the delay, maintains that "the vast majority can be described by a 'more neutral' reason, such as the [eighteen]-month delay resulting from court congestion." Commonwealth's Br. 27–28.

We have done our own review of the docket,[7] and we agree largely with the parties' forty-month/ten-month apportionment of the delay between the Commonwealth and Kennedy.[8] We also agree with the Commonwealth that the

---

[7] Specifically, we have analyzed each of the nineteen scorable delays that appear on the docket and we have made our own calculation of the number of days attributable to each party for speedy trial purposes.

[8] While AEDPA requires that we defer to state court findings of fact, here the finding of the PCRA and Superior Courts that only sixteen days of delay were attributable to the Commonwealth has no preclusive weight, as the finding was made applying the factors that apply to the calculation of delay for purposes of Pennsylvania's Rule 600, and not those used in a Sixth Amendment analysis. Although the District Court erroneously adopted the Rule 600 finding, the Commonwealth, to its credit, does not rely on it.

12

bulk of the delay falls within *Barker*'s second, more neutral category of delay caused by negligence and court congestion. While overcrowded courts are a systemic problem, and not one laid directly at the feet of the prosecution, it is right that it be weighed, albeit less heavily, against the Commonwealth. The "ultimate responsibility for such circumstances must rest with the [G]overnment," rather than with the defendant, "since it is the Government's duty to bring a defendant to trial." *Battis*, 589 F.3d at 679 (first alteration in *Battis*) (quoting *Barker*, 407 U.S. at 531). Moreover, "the weight [a court will] assign to official negligence compounds over time as the presumption of evidentiary prejudice grows." *Doggett*, 505 U.S. at 657. Here we readily conclude that this second of the *Barker* factors weighs in Kennedy's favor.

The third *Barker* factor assesses the degree to which a defendant asserted his speedy trial right, "including 'the frequency and force' of such assertions." *Velazquez*, 749 F.3d at 182 (quoting *Barker*, 407 U.S. at 529). Our case law provides guidance as to the degree of persistence that satisfies this standard. At one extreme, in *Government of the Virgin Islands v. Pemberton*, 813 F.2d 626 (3d Cir. 1987), the defendant—represented by counsel—made no objections at all during a sixteen-month delay; hence, this third factor weighed heavily in favor of the government. *See id.* at 628–29. At the other end of the spectrum, in *Hakeem*, the petitioner successfully invoked the right: he asserted it in a *pro se* letter to the state court, and then again in a petition filed in the federal court one month before his trial began. 990 F.2d at 764–66.

Kennedy asserted his speedy trial rights twice: First, on January 4, 2010, nearly four months after his arrest, when (through counsel) he filed an omnibus pre-trial motion, which included an unsuccessful invocation of his speedy-trial rights.

13

Second, on March 8, 2010, nearly six months after his arrest, Kennedy moved to be released from pre-trial detention, arguing that Pennsylvania "ha[d] not exercised due diligence," and that he "ha[d] not been afforded his right to a mandatory prompt trial." JA 158. During the nearly forty-four months that followed, Kennedy did not again invoke his right to a speedy trial, suggesting that his appetite for proceeding to trial had been dulled by his release from detention.

In *Barker*, the Supreme Court, after speculating that the defendant had a strategic interest in delaying his trial for four years while the case against his co-defendant was being resolved, weighed the third factor in favor of the government. 407 U.S. at 534–36. Similarly here, while we recognize that Kennedy had no burden to incessantly demand a speedy trial, his radio silence during the forty months that followed his release to house arrest leads us to weigh this third factor in the Commonwealth's favor. That said, Kennedy's failure to assert with sufficient vigor his speedy trial right "means only that the third *Barker* factor will be weighed against him"—it "does not mean that he cannot claim that his right to a speedy trial was violated." *Battis*, 589 F.3d at 681. Consequently, we proceed to the fourth factor.

The fourth and "most important factor" in the *Barker* analysis is the degree of prejudice suffered by a defendant because of any inordinate delay in bringing him to trial. *Hakeem*, 990 F.2d at 760. The Supreme Court has identified three types of harm that accrue from unreasonable delay: (1) "oppressive pretrial incarceration;" (2) "anxiety and concern of the accused"; and (3) "'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (alteration in original) (quoting *Barker*, 407 U.S. at 532).

14

Although excessive delay can lead to a presumption of prejudice, "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay." *Id*. at 656 (citation omitted).

We address each harm in turn. First, Kennedy concedes that, without more, his ten months of pretrial incarceration followed by six months of restrictive house arrest were not sufficiently lengthy or oppressive to support a finding of prejudice. *See Hakeem*, 990 F.2d at 762 (finding that fourteen months pretrial incarceration is not *per se* prejudicial). Kennedy argues, appropriately we think, that these periods of pretrial incarceration and restrictive housing should carry weight in our evaluation of the other prejudice factors.

Moving to the second category, the "anxiety and concern of the accused," Kennedy notes that the Supreme Court recognized in *Barker* that ten months of incarceration, followed by "living for over four years under a cloud of suspicion and anxiety" after release on bail, "prejudiced [Barker] to some extent." 407 U.S. at 534. Here, Kennedy complains that the looming indictment interfered with his employment by limiting his opportunities in the Marine Corps and ultimately preventing him from reenlisting. *See Betterman v. Montana*, 578 U.S. 437, 444 (2016) (explaining that the "major evils" the Speedy Trial Clause seeks to avoid are delays that "disrupt [the defendant's] employment, drain his financial resources, [and] curtail his associations") (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)); *see also Burkett v. Fulcomer*, 951 F.2d 1431, 1444 (3d Cir. 1991) (recognizing, in a post-conviction context, "the fact that there has been disruption to a defendant's employment, his financial

15

resources affected and the general strain and anxiety put upon family and friends constituted prejudice which must be considered in ascertaining whether there has been a speedy trial violation," but finding such a showing outweighed by other *Barker* factors (construing *Pemberton*, 813 F.2d at 629–30)). In sum, this second category of prejudice militates slightly in favor of Kennedy.

The third and "most serious" form of prejudice is any impairment of a defense at trial. *Barker*, 407 U.S. at 532. In this regard, a defendant is permitted to claim prejudice without providing "affirmative proof of particularized prejudice." *Doggett*, 505 U.S. at 655. Rather, a "presumptive prejudice" flows from the reality that a defendant's ability to prove that his defense was impaired by delay is diminished by "time's erosion of exculpatory evidence and testimony"— consequently, "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id*. at 655–56. Presumptive prejudice "can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government 'affirmatively prove[s] that the delay left [the defendant's] ability to defend himself unimpaired.'" *Battis*, 589 F.3d at 682 (quoting *Doggett*, 505 U.S. at 658 & n.1) (alterations in original).

*Battis* provides a useful starting point. In that case, we held "that prejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government. After such a long delay, witnesses become harder to locate and their memories inevitably fade." *Battis*, 589 F.3d at 683. Here, we have a similar length of delay attributable for the most part to the

16

Commonwealth. It is, of course, open to the Commonwealth to "attempt to rebut this presumption," by "affirmatively prov[ing] that the delay left [Kennedy's] ability to defend himself unimpaired" or by "showing that [Kennedy] acquiesced in the delay." *Id.* at 682–83 (quotation omitted).

The Commonwealth makes the argument that Kennedy suffered no actual prejudice, but as we have noted, "the government faces a high, and potentially insurmountable, hurdle in seeking to disprove general prejudice where the period of delay is extraordinarily long." *Velazquez*, 749 F.3d at 185. The Commonwealth contends that Kennedy waived the presumptive prejudice argument, but this is plainly incorrect, as Kennedy's discussion of prejudice in his opening brief highlighted the presumption and included an extensive analysis of that factor in *Battis*. Alternatively, the Commonwealth argues the delay affirmatively aided Kennedy, citing the metamorphosis of a cooperating witness, victim Kahim Welton, into a hostile witness who refused to testify at the trial. But, as Kennedy notes, the transformation precluded him from effectively cross-examining Welton, while allowing the Commonwealth to read into the record, line by line, Welton's 2009 police interview, supplemented with Welton's answers to questions at a 2009 preliminary hearing. Kennedy argues that this also prevented him from presenting mitigating evidence, for example, that he was taking orders from his father.

The Commonwealth claims that any concerns about the admission of Welton's prior recorded testimony are allayed by the fact that another witness, victim Takia Nichols, corroborated the version of events Welton gave to police. But as Kennedy notes, police never took a contemporaneous statement from Nichols and therefore the possibility that her testimony was "coached" by her exposure to Welton's

17

statement cannot be ruled out. As in *Velazquez*, it is insufficient for the Commonwealth to cite to the strength of its own case and expect Kennedy to rebut it: Rebuttal, in these circumstances, "is precisely the sort of difficult-to-obtain proof that supports the finding of general prejudice in a case of extraordinary delay." *Velazquez*, 749 F.3d at 185. On balance, we find that the fourth *Barker* factor weighs against the Commonwealth.

In sum, the first *Barker* factor weighs heavily against the Commonwealth, as a fifty-month delay is exceptional. The second factor weighs against the Commonwealth as well, though not as heavily as the first, as not all the delay is attributable to the Commonwealth's negligence. The third factor weighs in favor of the Commonwealth, because while Kennedy invoked his speedy trial rights twice early in the case, he did not renew the invocation after he was released from detention. Finally, the fourth factor weighs against the Commonwealth, as it has not overcome the presumptive prejudice of a four-year delay, despite the strength of its case at trial. And here, Kennedy has pointed to prejudice above and beyond presumptive prejudice—including prejudice stemming from loss of employment, anxiety, and incarceration. That evidence, when weighed alongside presumptive prejudice, tips this factor in Kennedy's favor.

Overall, the weighing of the four factors persuades us that Kennedy's speedy trial rights were violated.

## **CONCLUSION**

For the foregoing reasons, we reverse the District Court and remand with instructions to grant the petition and order the petitioner's release forthwith.