[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13152

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LUIS RAUL VICENTE FONSECA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20844-RNS-1

_____

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Luis Raul Vicente Fonseca appeals his conviction for possession and distribution of child pornography. He argues that the district court erred three times: by denying his motion to suppress evidence obtained from a forensic search of his cellphones, by denying his motions to dismiss on speedy trial grounds, and by denying his motion for a new trial based on the government's failure to provide him Jencks Act material. We find no error in the district court's rulings and therefore affirm Fonseca's conviction.

**I.**

On December 11, 2019, a Customs and Border Protection officer stopped Luis Fonseca at Miami International Airport as he entered the country via a flight from Panama. Department of Homeland Security officials had earlier begun an investigation of Fonseca after receiving a tip from the National Center for Missing and Exploited Children that somebody had downloaded over one thousand files containing suspected child pornography to a Yahoo account registered in his name. Agents searched Fonseca and his luggage, discovering three cellphones.

Fonseca informed the customs officer who took possession of these phones that he was an attorney in Venezuela. But he could not provide any details regarding his law practice, which led the officer to doubt the veracity of this claim. Even so, Homeland

Security internal directives required customs officers to contact an associate assistant chief counsel or U.S. Attorney before searching information that might be subject to attorney-client privilege. Here though, investigators did not make such contact; they did, however, consult in-house agency counsel about Fonseca's privilege claims.

Invoking its border search authority, a Homeland Security analyst performed an initial forensic search of these cellphones. This initial search was limited to images and video to avoid reviewing any text communications in the phones, which agency counsel had advised was the likeliest place any attorney-client privileged material would be. The search revealed over one thousand child pornography files across the three phones.

Following this initial search, Homeland Security obtained a search warrant and established a privilege filter team in coordination with the U.S. Attorney's Office. No privileged information or any evidence substantiating Fonseca's claim that he was an attorney was ever discovered during the more complete search that followed.

Fonseca was indicted on two counts of possessing and distributing child pornography. Due to numerous trial continuances granted by the district court—some on Fonseca's motion, some on joint motion by Fonseca and the government, and the rest by the court sua sponte—over two years passed between Fonseca's January 2020 arraignment and the beginning of his trial in August 2022. One important factor—in March of 2020,

national and international authorities declared that the outbreak of Covid-19 constituted a pandemic, prompting the closure of many institutions. *See United States v. Dunn*, 83 F.4th 1305, 1307 (11th Cir. 2023). The Chief Judge of the Southern District of Florida issued eleven administrative orders between 2020 and 2021, which automatically continued all jury trials between March 16, 2020, and July 19, 2021. *See* Administrative Order 2020-18, S.D. Fla. (March 13, 2020); Administrative Order 2021-65, S.D. Fla. (July 8, 2021). Some jury trials resumed in a limited fashion between July 19 and September 6, 2021. Administrative Order 2021-65, S.D. Fla. (July 8, 2021). The orders also purported to stop the clock on all Speedy Trial Act calculations during this entire period. *Id.*

Before trial, Fonseca moved to suppress all evidence obtained from the search of his cellphones, arguing that a forensic cellphone search without reasonable suspicion was not justified by the border search exception to the warrant requirement, and that Homeland Security had failed to follow its internal directives and establish a filter team before searching phones that could have contained privileged material. Fonseca also twice moved to dismiss his criminal indictment before trial, arguing that the government had violated the Speedy Trial Act via excessive delay. The district court denied these motions.

After a two-day trial, a jury found Fonseca guilty on both counts. But following the verdict, the government discovered a problem. It had called Special Agent Pablo Llabre, the lead case agent on Fonseca's investigation, to testify regarding the National

Center for Missing and Exploited Children tip and the contents of Fonseca's phones. Llabre had also earlier testified before the grand jury, but the government had not provided Llabre's grand jury testimony to the defense before trial, as required by the Jencks Act and the district court's scheduling order. The government provided the missing material to the defense after the conclusion of the trial when it discovered the error. Fonseca moved for a new trial on the grounds that the government's failure to turn over Jencks Act material related to Agent Llabre's testimony had prejudiced Fonseca's defense. The district court denied this motion. Fonseca appeals.

## II.

We review a denial of a motion to suppress under a mixed standard of review. We review factual findings for clear error, construing the evidence in the light most favorable to the government, and legal conclusions de novo. *United States v. Whyte*, 928 F.3d 1317, 1327 (11th Cir. 2019).

We review whether the government violated a defendant's speedy trial rights under either the Speedy Trial Act or the Sixth Amendment under a mixed standard of review. We review de novo the district court's denial of a motion to dismiss based on a violation of the Speedy Trial Act and for clear error the court's factual determinations as to excludable time. *Dunn*, 83 F.4th at 1314. A district court's decision to grant or deny an ends-of-justice continuance under the Act is reviewed for an abuse of discretion. *Id*. We review a district court's legal conclusions regarding the

6                    Opinion of the Court                    22-13152

constitutional right to a speedy trial under the Sixth Amendment de novo and its factual findings for clear error. *United States v. Oliva*, 909 F.3d 1292, 1301 (11th Cir. 2018).

We review the denial of a motion for a new trial based on an alleged Jencks Act violation for abuse of discretion. *United States v. Naranjo*, 634 F.3d 1198, 1206 (11th Cir. 2011). A new trial is not warranted if the Jencks Act violation is harmless. *United States v. Jones*, 601 F.3d 1247, 1266 (11th Cir. 2010).

### III.

### A.

Fonseca argues that the district court erred by denying his motion to suppress the evidence obtained from the search of his cellphones at Miami International Airport. He correctly admits that his first argument for suppression—that forensic searches of cellphones at the border still require individualized reasonable suspicion—is foreclosed by this Circuit's precedent. *See United States v. Touset*, 890 F.3d 1227, 1232–37 (11th Cir. 2018).

Fonseca's second argument is that the DHS agents searching his phones violated the Fourth Amendment by failing to follow their agency's privilege procedures after Fonseca informed them that he was an attorney in Venezuela and that the phones might contain privileged material. But as this Court has explained in the due process context, an agency's failure to follow its own internal operating procedures does not automatically result in a constitutional violation. *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1319 (11th Cir. 2022). It is true, as Fonseca argues,

22-13152                Opinion of the Court                7

that we have previously blessed the use of filter teams as sufficiently protective of Fourth Amendment rights. *E.g., In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235 (11th Cir. 2021). But that has little bearing on whether DHS's search of Fonseca's cellphones here was constitutional. Our approval of a particular filter procedure does not imply that it is the only way an agency can constitutionally search materials that may be privileged.

As the district court found, the precautions DHS took during the search of Fonseca's phones likely complied with DHS's internal directives for searches implicating purportedly privileged material. But even if they hadn't, Fonseca has not made any further showing that the government violated his Fourth Amendment rights. The government took adequate precautions to safeguard against disclosing privileged material: the agents consulted with in-house counsel about how to handle the phones given privilege concerns; they limited their initial search to only pictures and videos, not text, to avoid discovering any attorney-client communications; and they obtained a warrant and assembled a filter team before more fully examining the phones' contents. And ultimately, no privileged material was ever found. We thus find no error in the district court's denial of Fonseca's motion to suppress.

**B.**

1.

Fonseca next argues that he was denied a speedy trial in violation of both the Speedy Trial Act and the Sixth Amendment.

We first consider his claim under the Speedy Trial Act, which provides that the trial of a criminal defendant who pleads not guilty must begin within seventy days of either the indictment being filed or the defendant's first appearance before a judicial officer, whichever is later.  18 U.S.C. § 3161(c)(1).  If the defendant is not tried within that time, the district court must grant the defendant's motion to dismiss the indictment.  *Id.* § 3162(a)(2).

The Act's seventy-day period may be tolled for certain statutorily enumerated reasons.  *See id.* § 3161(h).  Relevant here, the duration of a continuance granted by the district court is excluded from the calculation of the seventy days, but only "if the judge granted such continuance on the basis of his findings that the ends of justice served by" the continuance "outweigh the best interest of the public and the defendant in a speedy trial."  *Id.* § 3161(h)(7)(A).  The Act provides a series of factors for the district court to consider when deciding whether the continuance serves the ends of justice and requires the court to set forth its reasons for its decision in the record.  *Id.* § 3161(h)(7)(A)–(B).  The district court need not make its findings regarding an ends-of-justice continuance contemporaneously with granting the continuance so long as the findings are on the record by the time the court rules on the defendant's motion to dismiss for a speedy trial violation.  *United States v. Ammar*, 842 F.3d 1203, 1207 (11th Cir. 2016).

The Southern District of Florida's administrative orders related to the Covid-19 pandemic purported to toll all Speedy Trial Act periods from March 16, 2020 through September 6, 2021 and

set forth detailed ends-of-justice findings to that end.  *See* Administrative Order 2020-18, S.D. Fla. (March 13, 2020); Administrative Order 2021-65, S.D. Fla. (July 8, 2021).  In *United States v. Dunn*, this Court declined to reach the question of whether these blanket, district-wide administrative orders satisfied the Speedy Trial Act on their own.  *See Dunn*, 83 F.4th at 1315–16.  *Dunn* held instead that the continuances entered by the magistrate judge in that case were sufficient to stop the speedy trial clock because they cited the "fact that all grand jury sessions in the Southern District were temporarily continued due to the COVID-19 pandemic."  *Id*. at 1317.  Under the "COVID-19 pandemic circumstances," district courts "were not required to make more case-specific, ends-of-justice findings, beyond the COVID-19 pandemic-related one, in order to comply with § 3161(h)(7)(A)."  *Id*.

Fonseca argues that the district court failed to adequately state its findings why its continuances served the ends of justice on the record.  Adding the time represented by those continuances back to the calculation, Fonseca argues, more than two years had run on the speedy trial clock before his trial began.  We disagree.  True, the district court's continuance orders did not provide extensive explanations for its ends-of-justice findings.  But its orders denying Fonseca's motions to dismiss on speedy trial grounds explained how its previous continuances served the ends of justice, including by referencing the Southern District's administrative orders suspending jury trials during the pandemic.  Because a court may set out its ends-of-justice findings retroactively in this manner,

the speedy trial clock was properly stopped for the duration of the continuances. *See Ammar*, 842 F.3d at 1207; *Dunn*, 83 F.4th at 1318. There was no Speedy Trial Act violation.[1]

2.

Moving on to Fonseca's Sixth Amendment claim, that Amendment guarantees criminal defendants the right to a speedy trial. If a court finds a denial of this constitutional right, it must vacate any conviction and sentence imposed and dismiss the criminal indictment. *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010). While "compliance with the Speedy Trial Act does not bar Sixth Amendment speedy trial claims, it will be an unusual case in which time limits of the Speedy Trial Act have been met but the Sixth Amendment right to a speedy trial has been violated." *United States v. Schlei*, 122 F.3d 944, 986 (11th Cir. 1997) (alterations adopted and quotation omitted). In *Barker v. Wingo*, the Supreme Court established a four-factor test to determine whether a defendant's constitutional, as opposed to statutory, speedy trial rights were denied. 407 U.S. 514, 530 (1972). We weigh

---

[1] Fonseca also argues that the district court violated 18 U.S.C. § 3174 by failing to follow its requirements for declaring a judicial emergency, which would have suspended the Speedy Trial Act period for up to 180 days. As the district court explained, the Southern District of Florida never invoked the judicial emergency provisions of 18 U.S.C. § 3174 during the Covid-19 pandemic. Instead, it found good cause under 18 U.S.C. § 3161(h)(7)(A) to toll the speedy trial period. *See United States v. Dunn*, 83 F.4th 1305, 1307–09 (11th Cir. 2023). The district court's continuances thus could not have violated § 3174, because that provision was never active.

(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the actual prejudice borne by the defendant. *Id.*; *see Villarreal*, 613 F.3d at 1350.

The first factor of this test establishes a threshold inquiry: unless the defendant establishes that the delay between indictment and trial was "presumptively prejudicial," the remaining factors will not be considered and his speedy trial claim will fail. *Villarreal*, 613 F.3d at 1350. Here, that standard is met. Because more than one year passed between Fonseca's indictment and his trial, the delay was presumptively prejudicial, and we may proceed to the remaining factors. *Id.* at 1351.

The second factor does not weigh against the government. Fonseca argues that most of the delay was attributable to the Covid-19 pandemic, rather than to any fault of Fonseca. We agree, but the logic cuts both ways—the Covid-19 delay cannot be attributed to any fault of the government either. An unforeseen global health emergency is precisely the kind of "valid reason" out of the government's control that justifies appropriate delay. *Barker*, 407 U.S. at 531.

We have repeatedly found that the third factor—assertion of the speedy trial right—does not weigh against the government when a defendant knows of pending charges against him but delays raising the speedy trial issue until a motion to dismiss. *E.g.*, *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003); *United States v.*

*Hill*, 622 F.2d 900, 909–10 (5th Cir. 1980).[2]  Here, Fonseca initially waived his speedy trial rights, only re-asserting them for the first time in a motion to dismiss about nineteen months after his arrest and indictment.  This alone makes it "difficult for him to prove that he was denied a speedy trial." *Villarreal*, 613 F.3d at 1355 (alteration adopted and quotation omitted).  Worse, Fonseca moved for several continuances both before and after moving to dismiss on speedy trial grounds—hardly the behavior of "a defendant aggressively asserting his desire to be tried promptly." *United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007); *see United States v. Register*, 182 F.3d 820, 828 (11th Cir. 1999).  The third factor thus weighs strongly against Fonseca.

Because the first three factors do not uniformly weigh heavily against the government, Fonseca must show actual prejudice on the fourth factor to succeed in showing a violation of his constitutional right to a speedy trial. *Villarreal*, 613 F.3d at 1355. We assess the prejudice suffered by the defendant in light of the three interests protected by the speedy trial right: "(1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Id.* (quotation omitted).  The last interest is the most important. *Id.*

---

[2] Decisions by the former Fifth Circuit handed down before October 1, 1981 are binding on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Two of these three interests were not impaired by the delay in Fonseca's trial. While he may well have experienced anxiety and concern awaiting his trial on child pornography charges, Fonseca was neither subject to oppressive pretrial incarceration nor hindered from assisting in his own defense. He was released on bond and subject to house arrest for the majority of the pre-trial period: from January 2020 to July 2022. His bond was revoked on July 27, 2022, after the district court discovered that he lied during a plea colloquy related to a proffered guilty plea that was later withdrawn. Fonseca then was incarcerated for about one month before the start of his trial on August 29. This sequence was not so lengthy or oppressive as to implicate prejudice. *See Kennedy v. Superintendent Dallas SCI*, 50 F.4th 377, 384 (3d Cir. 2022); *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009). And Fonseca does not argue at all that the delay hindered his defense—the most important interest when considering actual prejudice. The fourth *Barker* factor thus heavily weighs against Fonseca.

Because the first three *Barker* factors did not each weigh heavily against the government and Fonseca did not prove actual prejudice, we find that Fonseca's constitutional speedy trial rights were not infringed. *See Oliva*, 909 F.3d at 1306.

## C.

Finally, Fonseca argues that the government's failure to provide him Jencks Act material warrants a new trial. The Jencks Act provides that, on a defendant's motion, the district court "order the United States to produce any statement" of a witness called by

the United States "in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b).  The purpose of this disclosure requirement is to permit the defense to impeach the government's witness during cross-examination.  *United States v. Prieto*, 505 F.2d 8, 11 (5th Cir. 1974).  Both parties agree that the government violated the Act by failing to disclose Agent Llabre's grand jury testimony before trial. But a mere failure of disclosure is not enough to merit a new trial. Fonseca must also show that he was prejudiced.  *United States v. Hamaker*, 455 F.3d 1316, 1327 (11th Cir. 2006).

Fonseca's main argument is that Llabre used the word "upload" when he described to the grand jury how Fonseca saved child pornography images and videos, but then used the word "share" during his trial testimony.  The government's failure to disclose Llabre's grand jury testimony, he says, deprived him of the ability to cross-examine Llabre about the difference, if any, between those two words.  But Fonseca had access to two other documents which used the word "upload": an affidavit from Llabre and the report from the National Center for Missing and Exploited Children that tipped off the police that Fonseca might possess child pornography.  The grand jury testimony was merely cumulative because Fonseca could have cross-examined Llabre about differences between the two words without it.  That means the government's failure to disclose Jencks Act material was harmless. *See United States v. Valera*, 845 F.2d 923, 928 (11th Cir. 1988).

★   ★   ★

The district court correctly found that the government's search of Fonseca's cellphones did not violate the Fourth Amendment, that Fonseca's speedy trial rights were not violated, and that the government's failure to disclose Jencks Act material was harmless. We therefore **AFFIRM** Fonseca's conviction.